RUSSELL, Judge.
On August 10, 1991, following a predisci-plinary hearing, the City of Prichard (City) terminated the employment of Bill David Williams, a City police officer. Williams filed a protest of his dismissal with the Mobile County Personnel Board (Board), which conducted a full evidentiary hearing on September 19, 1991. On September 24, 1991, the Board entered an order upholding Williams’s dismissal. Thereafter, Williams appealed to the circuit court, which found that there was substantial evidence to support the dismissal of Williams and, accordingly, affirmed the Board’s order. From the judgment of the circuit court dated March 81, 1992, Williams appeals to this court. We affirm.
Initially, we note that review by the circuit court is, in effect, that of certiorari and is limited to the record made before the Board. City of Mobile v. Trott, 596 So.2d 921 (Ala.Civ.App.1991). The circuit court may not judge the wisdom of the Board’s decision; rather, if substantial evidence supports the Board’s judgment, the circuit court must affirm that judgment. Id. Furthermore, the same standard of review applies to this court. Id.
Substantial evidence is more than a mere scintilla of evidence but can be less than a preponderance of the evidence. Freman v. City of Mobile, 590 So.2d 331 (Ala.Civ.App.1991). It is relevant evidence that provides a rational basis for the conclusions approved by the Board and that might be accepted by reasonable minds as adequate to support a conclusion. Trott, 596 So.2d 921.
The record indicates that on the night of July 4,1991, Williams was called to a Prich-ard residence in response to a report that a suspect in a reckless driving incident had fled to that address. The alleged incident had not taken place in Williams’s presence. When Williams arrived at the residence, two other police officers were already present and were questioning the occupants — a man and a woman whose teenaged son was a suspect in the incident. Also present at the scene was Doug Bethea, a retired police officer then employed as a “bounty hunter." Bethea had witnessed the alleged reckless driving incident and had made a call reporting it to a police operator.
The Board heard extensive testimony regarding the actions of Williams and the other officers on the night in question. When Williams arrived at the scene, he initially searched a car parked in the driveway behind the house, removing an ice chest from it. This search was conducted, improperly, without a warrant. Testimony from a number of witnesses indicated that Bethea, although not a police officer, appeared to be directing the actions of the officers at the scene, including Williams. The suspect’s mother testified that when she objected to Bethea’s demand that the police tow the car away, Williams said, “We can take the car. We can do what we want to do.” According to witnesses, Williams continued to talk to the woman and her husband in an abusive manner punctuated by profanity. Bethea, too, was verbally abusive to the woman. He was also, in the presence of Williams, taking pictures of the car. When the woman again protested against the removal of the *270 car, Bethea shouted to the officers to arrest her. At that point, Williams and another officer grabbed the woman’s arms and held her hands behind her back. Although one of the officers testified that the woman was restrained for “maybe three to five seconds,” the woman testified that her hands were held behind her back for some two minutes. According to testimony, Be-thea directed the officers to handcuff the woman, although this command was not followed. At no time during the altercation, which took place in the backyard of the residence, did Williams, the senior officer on the scene, order Bethea to leave or indicate to him that his presence was improper. Bethea was dressed in civilian clothing and was known by Williams not to be a police officer.
The record also indicates that prior to Williams’s arrival at the scene, one of the responding officers had received permission from the woman to enter her house and look for her son. At that time Bethea also entered the house and began searching for the suspect. According to the woman, the officer and Bethea were still in the house when Williams arrived. However, she indicated that Williams did not enter her home. Testimony was inconclusive as to whether Williams was aware that Be-thea had joined the other officer in the search of the house. The record shows that the suspect was never arrested for the underlying driving incident. One of the three officers involved resigned from the police force and one received a written reprimand. Bethea was ultimately arrested for his actions.
In its notice to Williams of the predisci-plinary hearing, the City advised Williams that disciplinary action — “reprimand/suspension/termination” — was contemplated for the following reasons:
“Attempting to make a misdemeanor arrest without first having a warrant, contrary to State law;
“[Prichard Police] General Rule # 9: Conduct unbecoming an officer;
“[Prichard Police] General Rule # 12: Conduct prejudicial to the reputation on [sic] good order of the Police Force;
“[Prichard Police] General Rule # 52: Following the advise [sic] or any suggestion of any other person contrary to the Rules and Regulation of the Police Department;
“Mobile County Personnel Board Rule # 14.2(j): Neglect of Duty.”
Williams maintains that this notice was insufficient to apprise him of the charges against him and was so overly general as to deprive him of an opportunity to prepare a defense. He asserts that because Mobile County Personnel Board Rule # 14.3(a) expressly provides that a deficiency in the predisciplinary process may not, except in extraordinary circumstances, be cured by post-termination proceedings, the more specific notice that he eventually received prior to the Board hearing did not afford him due process. Williams’s contention notwithstanding, we find that the notice given to him prior to the prediscipli-nary hearing contained charges specific enough to apprise him of the allegations against him and to give him notice of the conduct which precipitated the conclusions contained in the charges. See Peseau v. Civil Service Board of Tuscaloosa, 385 So.2d 1310 (Ala.Civ.App.1980). Further, these charges were sufficient, if proven, to warrant Williams’s dismissal. See Johnston v. State Personnel Board, 447 So.2d 752 (Ala.Civ.App.1983).
The Board, in its order, found that the City’s action in dismissing Williams was not arbitrary or unreasonable and was fully supported by the material evidence presented at the hearing. The latter part of the Board’s order places some emphasis on the City’s charge that Williams illegally searched the residence during the incident in question. In this regard, the circuit court, in its order, appeared to express some reservations as to whether there was substantial evidence supporting the charge that Williams had actually searched the residence. Nevertheless, the court upheld the Board’s decision, stating that “if the action of the lower forum is legally and factually supported by the record, it is due to be affirmed notwithstanding that the rationale of the lower forum may (or may *271 not) have been incorrect.” Williams contends, however, that the circuit court improperly sustained his dismissal on a theory not relied upon by the Board.
Williams’s argument will not stand. Although the circuit court did question the sufficiency of the evidence of Williams’s illegal search of the house, the court nonetheless found there to be substantial evidence in the record supporting a number of the other charges discussed in the Board’s findings. While it is true that in its order the Board emphasizes the right of citizens to be free from illegal searches and addresses the impropriety of violations of that right by law enforcement officers, the Board’s order also contains extensive findings regarding the other charges against Williams (e.g., conduct unbecoming a police officer, neglect of duty, improperly taking orders from a civilian). The Board’s findings contained detailed summations of testimony from the City’s chief of police, the officers on the scene on the night in question, and private citizens, including Bethea, the residents of the house, and a neighbor who witnessed the incident. Numerous witnesses testified that Williams appeared to be taking orders from Bethea. In this regard, the chief of police testified that, as the senior officer, Williams should have ordered Bethea, a private citizen, away from the scene and should have made other efforts to bring the situation under control.
It is clear that even the latter part of the Board’s order refers to Williams’s overall conduct at the scene. The Board specifically noted that it will support appointing authorities — i.e., the City — “in enforcing discipline and demanding courteous and efficient service from public employees.” There was considerable evidence before the Board that Williams neglected his duty to enforce discipline and that his conduct was excessively rude and abusive. We find little merit in Williams’s contention that the Board and the circuit court premised his dismissal solely on the issue of his purported search of the residence. (Notably, Williams did not dispute the fact that he illegally searched the car, which was parked in the driveway just outside of the residence.)
Based on the above, we conclude that there was substantial evidence to support the Board’s decision of dismissal and hold that the judgment of the circuit court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.