ROBERTSON, Presiding Judge.
On March 17, 1993, Paul W. Hunter filed a complaint, in the Montgomery County Circuit Court, against S.R. Christopher, individually and doing business as Christopher Diesel Services, and Deaton, Inc., seeking workers’ compensation benefits. Hunter alleged that on September 10, 1992, he was employed by Christopher as a truck driver, and that he injured his right eye while loading a truck in Sparrow Point, Maryland, when a tarpaulin strap broke and hit him in the right eye. He also alleged that at the time of his injury Christopher had leased trucks to Deaton, that the truck he had been driving had been leased to Deaton, and that Christopher had paid premiums to Dea-ton “in order to be covered by workers’ compensation.” Hunter alleged that his average weekly wage was $371.98 at the time of the accident; that Christopher and Dea-ton had had timely and actual notice of his accident; that he had been temporarily totally disabled; that he was permanently partially disabled as the result of his injury; and that he had suffered a loss of earning capacity. He further alleged that he had been caused to obtain medical treatment for his injury; that Christopher and Deaton had failed to pay his reasonable and necessary medical expenses; and that Christopher and Deaton had failed to pay him any workers’ compensation benefits.
On May 5, 1993, Deaton admitted that Hunter was an employee of Christopher, however, Deaton denied that Hunter was an employee of Deaton; Deaton denied owing Hunter workers’ compensation benefits; and Deaton denied that it was responsible for paying Hunter’s medical expenses. Deaton asserted as affirmative defenses that Hunter’s complaint was barred by the statute of limitations; that Hunter’s complaint failed to *566 state a claim upon which relief could be granted; that Hunter was guilty of misconduct; that Hunter “had assumed the risk”; and that Hunter had been contributorily negligent.
On October 14, 1993, Christopher answered, alleging that Hunter had received payment, and that Hunter had failed to give proper notice. Christopher denied Hunter had been injured in the line and scope of his employment, and pled accord and satisfaction.
On January 2, 1994, Deaton filed a motion for summary judgment, alleging that it was entitled to judgment as a matter of law, because, Deaton said, it was not Hunter’s employer within the meaning of § 25-5-1, Ala.Code 1975, and because Deaton did not have an agreement with Christopher to provide workers’ compensation insurance or benefits to Christopher or to his employees. On February 4,1994, Hunter filed a response in opposition to Deaton’s motion for summary judgment.
Following an ore tenus proceeding on March 14, 1994, the trial court entered a judgment on October 31, 1994, stating in pertinent part:
“It is without dispute that [Hunter] was injured in an accident which arose out of and in the line and scope of his employment on September 10, 1992, when a strap or cord being used to secure a load of materials broke, hitting [Hunter] in the right eye and causing him injury. At the time of the injury, [Hunter] was driving a truck that was owned by [Christopher] and leased by ... Deaton.
“The parties have stipulated that [Hunter] was earning average wages of approximately $371.98 per week at the time of his injury. The parties have further agreed that this average weekly wage figure is the amount to be used in determining the amount of workers’ compensation benefits to which [Hunter] is entitled as a result of this injury.
“The primary issue at trial concerned whether Deaton or ... Christopher was [Hunter’s] ‘employer’ as that term is defined by the Alabama Workers’ Compensation Act.
“It is without dispute that on March 3, 1992, Deaton entered into a Lease Agreement with ... Christopher which set out the terms and conditions of the lease agreement between the parties. According to the Lease Agreement, which was admitted into evidence as Defendant’s Exhibit 1, Christopher was to lease to Deaton tractor trailer trucks to be used in the transportation of certain freight as determined by Deaton. In exchange for the leased trucks, Deaton agreed to pay Christopher a certain percentage of the freight carried. Under paragraph three (3) of the Lease Agreement, Christopher was the owner of all leased trucks and he was responsible for all operating costs as well as performing all maintenance on his vehicles. Christopher was also responsible for providing labor and drivers for his trucks. Christopher was responsible for the payment of any wages and workers’ compensation benefits to his employees. Paragraph three (3) of the Lease Agreement states in pertinent part:
“3. [Christopher] agrees to pay the entire cost of operating said vehicle, except as otherwise specifically provided in the lease agreement, including the wages and other payment due by reason of ‘contractor’s’ employment of drivers or other labor, and including, but not limited to, all payroll taxes, work[er]’s compensation. ...
“The Lease Agreement between Christopher and Deaton further provides in paragraph seven (7) as follows:
“7. [Christopher] shall:
“Direct and control his employees, including selecting, hiring, supervising, firing, training, setting wages, hours and working conditions and paying and adjusting the grievances of his employees;
“The agreement further provides in paragraphs twenty-two (22) and twenty-three (23) as follows:
“22. ... Parties hereto agree that [Deaton] has no authority to or right to control the details of the operation of the lease equipment, and any agent or servant of [Deaton] is without authority to *567 control said operation, except to the extent required by law and-to accomplish the end result for which this lease is executed.
“23. Neither party hereto is the agent of the other, and neither party shall have the right to bind the other by contract or otherwise except as herein specifically provided. The parties intend to create by this lease agreement the relationship of carrier and independent contractor and not an employer-employee relationship. Neither [Christopher] nor his employees are to be considered as employees of the [Deaton] at any time, under any circumstances.
“Finally, in Addendum No. 2 to the Lease Agreement, also dated March 3, 1992, Christopher executed the following:
“I fully understand that neither my driver(s) nor I am an employee of Deaton, Inc. I acknowledge that I am an Independent Contractor under lease to Dea-ton, Inc.... I am not giving any control of my business to Deaton, Inc., but am merely assuming the responsibilities and requirements that Deaton has under Federal or State laws.
“Having heard the testimony of the witnesses, seen and reviewed the exhibits, in particular the Lease Agreement between Deaton and Christopher, heard arguments from counsel and considered the issues, the Court specifically finds that under the terms and conditions of the Lease Agreement, neither Christopher nor his employees, such as [Hunter], were to be considered employees of Deaton at any time under any circumstances. As such, ... Christopher is to be considered the employer of [Hunter] for the purposes of establishing liability under the Workers’ Compensation Laws of the State of Alabama.
“The Court hereby finds that [Hunter] has sustained a compensable injury arising out of and in the course of his employment with Christopher. The parties to this action stipulated that [Hunter’s] injury is to be treated in this action solely as a scheduled injury to his right eye and not as an injury to the body as a whole.” (Emphasis in original.)
The trial court awarded Hunter permanent partial disability benefits in the amount of $27,674.56 ($371.98 x66¾% = $247.98 x 111.6 weeks (90% of 124 weeks), and awarded Hunter’s attorney a 15% attorney fee.
On November 28, 1994, Christopher filed a motion to alter, amend, or vacate the October 31, 1994, judgment, alleging, among other things, that the judgment was contrary to the facts, and that the agreement between Deaton and himself was ambiguous.
On January 5, 1995, the trial court entered an order stating:
“Upon consideration of the evidence, arguments and submissions from counsel for the parties, it is ORDERED, ADJUDGED AND DECREED that a statutory penalty is assessed against ... Christopher for failing to carry Workers’ Compensation insurance on [Hunter]. This penalty is determined to be $220.00 per week for 124 weeks. The Motion to Alter, Amend, or Vacate Judgment heretofore filed by ... Christopher be and the same is hereby otherwise denied.”
Christopher appeals, contending that had the trial court utilized the “control test” set out in Ex parte Stewart, 518 So.2d 118 (Ala.1987), instead of relying on the lease agreement, Deaton would have been found to be Hunter’s employer; and that § 25-5-8(e), Ala.Code 1975, is penal in nature, and therefore, evidence of intent or malfeasance is necessary before the penalty, criminal or civil, is assessed.
Hunter’s accident and injury occurred on September 10, 1992; therefore, the new Workers’ Compensation Act is controlling. Our standard of review was changed by the new act. § 25-5-81(e), Ala.Code 1975. Our new standard of review is:
“We will view the facts in the light most favorable to the findings of the trial court. The trial court’s judgment will not be reversed unless it is clear that the trial court’s findings are manifestly contrary to the evidence as contained in the record as a whole or unless it is clear that fair-minded persons in the exercise of impartial *568 judgment would adopt a contrary conclusion.”
Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994).
We first address Christopher’s contention that had the trial court utilized the “control test” set out in Ex parte Stewart, 518 So.2d 118 (Ala.1987), instead of relying on the lease agreement, Deaton would have been found to be Hunter’s employer.
In Stewart, our supreme court rejected the exclusive use of the control test in workers’ compensation cases where there are “two or more putative employers.” Our supreme court held “in cases [involving two or more putative employers], the finder of fact should concentrate, not solely on control, but also on additional indicia of the employment relationship in determining an employee’s status.” Stewart, 518 So.2d at 121. The court suggested a “directed inquiry” into the actual contract for hire in order to determine the nature of the employment relationship. Stewart.
In addition to the findings of fact heretofore set forth from the trial court’s October 31, 1994, judgment, the record also reveals the following facts pertinent to this appeal: Hunter testified that on September 10, 1992, he had been employed by Christopher, that Christopher had five employees, and that “we were leased to Deaton, Inc.” Hunter received all of his paychecks from Christopher and Christopher withheld all payroll taxes from Hunter’s paychecks. Hunter testified that Christopher had hired him, that Christopher had the authority to fire him, and that Christopher had supplied the tarpaulin that struck him in the right eye.
Hunter also testified that he had filled out an application for employment for Deaton; that he had to go through Deaton’s driver qualification procedures to be able to drive one of Christopher’s trucks leased to Deaton; that Deaton’s name was on the side of the truck that he drove; and that Deaton had once paid him $25 for hauling a “spot load.” He testified that Deaton had dispatched his loads but that he had had the right to choose the loads he wanted to haul.
Christopher testified that when he entered into the lease agreement with Deaton, he thought that Deaton would be deducting premiums for workers’ compensation insurance from his checks. Christopher testified that Deaton had paid him a percentage of the freight loads that his drivers hauled and that Deaton had deducted premiums from his checks for OCC insurance, which he thought was workers’ compensation insurance. Christopher testified that he learned that the OCC insurance was occupational accident insurance and not workers’ compensation insurance only after Hunter filed his lawsuit.
Christopher admitted that he did not read the lease agreement before he signed it, and when asked about specific paragraphs of the lease agreement, he denied that it “worked that way.” Christopher specifically denied that he set his employees’ hours, that he could control the loads that they chose to haul; that he could hire anyone he wanted; and that his employees came to him to resolve grievances. He also denied knowing that a provision in the lease agreement gave Deaton the authority to control the activities of his trucks. However, Christopher admitted that under the lease agreement he was an independent contractor and not an employee of Deaton. He testified that under the lease agreement he was responsible for the maintenance of his trucks, for paying for his truck tags, for the operating costs of the trucks, i.e., oil and fuel, and for furnishing qualified drivers for his trucks.
Christopher testified that at the time of Hunter’s accident, he had six employees on a regular basis, all driving trucks leased to Deaton; that he set his drivers’s wages and paid their wages; that all of his drivers had to fill out Deaton applications to be accepted to drive his trucks under lease to Deaton; and that his drivers operated out of his yard and Deaton’s yard. He testified that he was also an agent for Deaton, and that as an agent for Deaton, he found freight for Dea-ton to haul on Deaton’s trucks. Christopher also testified that his drivers had the right to choose the loads that they would haul for Deaton, but that if his drivers had any problems with delivery or payment, the drivers usually went to the dispatcher at Deaton and then to him.
*569 Steve Thomason, Deaton’s company supervisor and supervisor of company drivers in March 1992, testified that the lease agreement between Deaton and Christopher had been signed in March 1992 and that Christopher had had three trucks which he leased to Deaton. He testified that the lease agreement required Christopher to comply with state law regarding workers’ compensation benefits.
Thomason testified that Deaton dispatched the leased truck drivers, but that Deaton did not exercise any control over the drivers except to ensure that the drivers complied with the Department of Transportation (DOT) regulations, i.e., stop after 10 hours of driving and keep the required logs. He admitted that Deaton had the same orientation for the leased truck drivers as it did for its own drivers, and that if a leased truck driver did not go to orientation, then the leased truck driver could not drive for Deaton.
After carefully reviewing the record, we conclude that the trial court’s findings of fact are supported by substantial evidence that Christopher was Hunter’s employer for purposes of the Workers’ Compensation Act; consequently, the trial court’s findings are not manifestly contrary to the evidence as contained in the record as a whole.
With regard to Christopher’s second contention, he cites as authority a general proposition regarding the meaning of the word “willful” when it is used in penal statutes. It is well established that general propositions are not considered supporting authority. Ex parte Riley, 464 So.2d 92 (Ala.1985). Christopher’s failure to cite supporting authority for his second contention leaves this court with no alternative but to affirm. Rule 28(a)(5), Ala.R.App.P.; Pierce v. Helka, 634 So.2d 1031 (Ala.Civ.App.1994).
The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
THIGPEN, YATES, MONROE, and CRAWLEY, JJ., concur.