This is a workers' compensation case.
In August 1994 Derryl McSween (employee) filed a complaint against Michelin Tire Corporation, a corporation (employer). The employee sought workers' compensation benefits for an injury that he allegedly sustained on or about January 31, 1994, while in the course of his employment with the employer.
Specifically, the employee alleged that he developed a debilitating medical condition known as subjective tinnitus (ringing in the ears) due to the constant noise level he was exposed to during the course of his employment.
After a hearing the trial court issued an order, finding that the employee was not entitled to any workers' compensation benefits. On March 27, 1996, the employee filed a motion to alter, amend, or vacate the judgment. On May 13, 1996, after a hearing, the trial court denied the employee's motion.
The employee appeals. *Page 147 
The dispositive issue on appeal is whether the findings of fact made by the trial court are supported by the legal evidence.
This case is governed by the new Workers' Compensation Act, which provides that this court's review of the standard of proof and other legal issues is without a presumption of correctness. Ala. Code 1975, § 25-5-81(e)(1). However, "[w]e will view the facts in the light most favorable to the findings of the trial court." Whitsett v. BAMSI, Inc., 652 So.2d 287,290 (Ala.Civ.App. 1994), overruled on other grounds, Ex parteTrinity Industries, Inc., 680 So.2d 262 (Ala. 1996). In Edwardsv. Jesse Stutts, Inc., 655 So.2d 1012, 1014
(Ala.Civ.App. 1995), this court concluded that "[t]he new Act did not alter the rule that this court does not weigh the evidence before the trial court."
Further, we would note that this court will not reverse the judgment of the trial court if the trial court's findings of fact in the case are supported by substantial evidence. Ala. Code 1975, § 25-5-81(e)(2). In Ex parte Trinity Industries,Inc., 680 So.2d at 268, our supreme court "defined the term 'substantial evidence,' as it is used in [Ala. Code 1975,] §12-21-12(d), to mean 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co., 547 So.2d 870,871 (Ala. 1989)."
With the above standard in mind, we deem it unnecessary to set out in detail the full facts of this case, which are very detailed and conflicting. Instead, we will focus on the pertinent facts and will elaborate mainly on the expert testimony provided by both parties.
We would also note that since both parties did present conflicting testimony, it was the responsibility of the trial judge to listen to the evidence presented ore tenus, to resolve the conflicts in the evidence, and to enter a judgment.Johnson v. Johnson, 597 So.2d 699 (Ala.Civ.App. 1991).
At the outset we would note that the employee apparently does suffer from a medical condition known as subjective tinnitus, which literally means that he hears a ringing sensation in his ears. Because the tinnitus is subjective, no one other than the employee can hear the ringing. As previously noted, the employee contends that the onset of his tinnitus occurred in January 1994 and was caused by the constant noise level that he was exposed to during the course of his employment. The employee takes medication for the tinnitus and wears maskers, which apparently masks the ringing sensation.
The employee worked for the employer from April 1, 1985, to March 25, 1994, at which time he took a medical leave of absence and never returned. The employee was 42 years old at that time. The employee worked mainly in the production department in the manufacturing process of tires. He is presently receiving $1,478 per month in long-term disability benefits from the employer.
On November 12, 1985, after working seven months for the employer, the employee allegedly reported to the employer's medical department and complained of an earache. Dr. W.C. Adams, the employer's company physician, reported the following notes in the employee's medical chart:
 "11/12/85 — 'cold' since 11/01/85 followed by earache — seen by [another doctor] on 11/09/85 — Ear reportedly reinflamed then — started Erythromycin P-V — tussin — today some ringing pain but exam today reveals no inflammation of either eardrum — still has rhinitis. . . ."
The employee denies ever visiting Dr. Adams or telling Dr. Adams that he had a ringing in his ears. The employer, of course, produced the above notes, as well as the sign-in log for November 12, 1985, which showed the employee's signature and the precise time that he signed in.
The deposition of Dr. Steven Harris, a board certified Ear, Nose, and Throat Specialist, was admitted into evidence. Dr. Harris testified that he examined the employee in February 1993 and conducted a hearing test on him. Dr. Harris stated that the employee reported having a high frequency ringing in his ears approximately one week following a cold or upper respiratory infection. *Page 148 
The employee related to Dr. Harris that he had a history of numerous ear infections as a child.
Dr. Harris examined the employee and diagnosed him as having a mild, high frequency, neuro-sensory hearing loss in both ears. The examination revealed that the employee's hearing was considered to be within the normal limits. Dr. Harris testified that, in his opinion, everyone develops a high frequency hearing loss and ringing in their ears if they get old enough, which could be related to many things, including, but not limited to, work environment, aircraft, gun shots, or loud music.
Dr. Harris opined that tinnitus was not a disease, lesion, diagnosis, or an injury, but was simply a common complaint which he treated quite frequently. Dr. Harris stated that a cold or upper respiratory infection could cause tinnitus and that the most common situation occurs when the person's perception of tinnitus is exacerbated by an upper respiratory infection. Dr. Harris further stated that he was unaware of any impairment rating or disability rating by the American Medical Association for subjective tinnitus.
The employee also sought the opinion of Dr. Dennis G. Pappas, a board certified Ear, Nose, and Throat Specialist. Dr. Pappas opined that the employee suffered from a mild, high-frequency, hearing loss, which was more typical of heredity or age-type hearing loss.
The depositions of Dr. Carl M. Nechtman, a board certified Ear, Nose, and Throat Specialist, were also admitted into evidence. Dr. Nechtman first examined the employee in July 1994 and diagnosed him as having a very mild sensory neural hearing loss and tinnitus. The employee relies heavily on Dr. Nechtman's testimony and contends that Dr. Nechtman stated that the employee had a medical impairment with regard to the tinnitus and that it was work-related.
After carefully reviewing the record, we note that the portions of Dr. Nechtman's testimony, on which the employee relies, are based solely upon the subjective history conveyed by the employee to Dr. Nechtman. Dr. Nechtman testified that "[t]innitus is a subjective problem that only the patient can give you the symptoms and [patients are] the only ones who can give you any results. There's no measurement for tinnitus." In other words, Dr. Nechtman based his opinion, that the employee's tinnitus was work-related, primarily on the employee's subjective complaints.
Dr. Nechtman stated that tinnitus could be caused by numerous problems, including an ear infection, a hole in the ear drum, an accumulation of fluids in the middle ear bones, allergies, high blood pressure, a tumor, diabetes, thyroid problems, and a head or neck injury.
Dr. Nechtman further stated that he had studied the employer's noise and audiometric records and reports of its production plant and that the employer had been very accommodating in making sure that the Occupational Safety and Health Association (OSHA) standard levels were not exceeded. Dr. Nechtman explained that, according to OSHA standards, an individual should not be exposed over an 8-hour workday to a noise level in excess of 90 decibels. The employer's audiometric records and reports indicated that its noise levels never exceeded the levels established by OSHA. Dr. Nechtman, therefore, testified that it would be extremely difficult to state objectively whether the employee's condition could have been sustained while working in the course of his employment.
Finally, Dr. Nechtman opined that the employee did not have a measurable hearing impairment that would cause him to be disabled. And, overall, Dr. Nechtman could not say with any degree of medical certainty that the employee's tinnitus was work-related.
The employee also relies heavily on the reports of two vocational rehabilitation counselors that were introduced into evidence. One of the evaluators found the employee to be totally disabled, while the other found the employee to have a 66% vocational disability. However, we would note that both the evaluators based the majority of their findings on Dr. Nechtman's subjective findings, as well as the subjective information relayed to them by the employee. *Page 149 
Fran Gilroy, a Certified Occupational Hearing Conservationist and Certified Occupational Health Nurse with the employer, testified at the hearing. Gilroy stated that the employee visited her on February 22, 1994, and that during the visit, the employee reported to her that he had ringing in his ears for the past year and that it was hereditary. Gilroy stated that she saw the employee again on March 17, 1994, and that once again he reported ringing in his ears and gave a family history of his mother having ringing in her ears. Gilroy further stated that all employees working in the production plant are periodically given an audiometric examination to test their hearing. According to Gilroy, the employee was tested on four different occasions and never had a threshold shift in his hearing.
The employee, however, contends that he does not know of anyone in his family who has been diagnosed with tinnitus. He further contends that he did not suffer from tinnitus until he began working with the employer.
The trial court stated the following analysis and conclusion in its order dated February 29, 1996. We find this portion of the trial court's order to be a proper summation of this case:
 "With respect to the statutory requisite of medical causation, this Court recognizes that this case involves a subjective condition known as tinnitus. From the testimony presented there is no way to [easily] diagnose or clinically diagnose subjective tinnitus. It is vastly different from those cases in which the disease or illness would be indigenous to the work place environment. For example, a coal miner with a disease of Pneumoconiosis could probably meet the causation requirement merely by proving the presence of the disease and the exposure to the hazards of ore dust. This disease or medical condition would be indigenous to the employee's occupation. Tinnitus, on the other hand, may be caused by many factors, occupational and nonoccupational. Tinnitus, it would seem, bears a heavier burden of proof with respect to medical causation. According to the testimony, this is a discomfort which is faced by many people. According to Dr. Nechtman, up to 35 to 50 million Americans are afflicted with this condition. As stated by Dr. Harris, it is not an injury, a disease, or even a diagnosis. In this type case, the Court feels it is incumbent upon the employee to show that tinnitus was an occupational phenomenon or condition and not an ordinary phenomenon or condition of life. Because, as the evidence shows, it very commonly occurs without occupational contributions.
 "The evidence seems to be without conflict that [the employee's] tinnitus could be related to many nonoccupational factors to which he was predisposed. He suffered numerous colds, earaches, upper respiratory infections, heredity traits and a prior head injury.
". . . .
 "It is this Court's conclusion that [the employee] was exposed to some occupational noise. However, from the evidence and those standards set forth by OSHA and the American Academy of Otolaryngology, and the opinion of the experts, this Court also determines that [the employee] was not exposed to an excessive amount of noise. This Court also concludes that the noise to which he was exposed was not sufficient to increase his risk so that it is more likely than not that the noise exposure contributed to his tinnitus."
In regard to medical causation, our supreme court, inEx parte Valdez, 636 So.2d 401, 405 (Ala. 1994), stated that "[a] mere showing of exposure, however, will not necessarily compel a finding in favor of the [employee] on the issue of medical causation." Instead, "the [employee] must show that [he] was exposed to a sufficient amount of [excessive noise levels] to considerably increase the risk of developing [tinnitus]." Id. at 405.
In light of the foregoing, we conclude that the trial court had substantial evidence before it to support its conclusion that "the noise to which [the employee] was exposed was not sufficient to increase his risk so that it is more likely than not that the noise exposure contributed to his tinnitus." *Page 150 
The crux of this entire case hinges on proof. The evidence reveals that there are numerous factors in our society that contribute to, or cause, tinnitus, many of which the employee was already predisposed to during his lifetime. The evidence also reveals that there is basically no way to diagnose tinnitus, since it is not a disease or injury. As the evidence reveals, it is basically a subjective complaint. Therefore, we have no choice but to affirm the judgment of the trial court.
This court's conclusion is based on a careful review of the record, as well as the very specific and detailed findings of fact set forth by the trial court in its order. Therefore, for this court to reverse would require that we substitute our judgment for that of the trial court. This, the law does not permit. Grubbs v. Crosson, 634 So.2d 593
(Ala.Civ.App. 1994).
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the Judges concur.