Mercy Medical ("the company") appeals from the trial court's award of workers' compensation benefits to Brenda Keao ("the worker"). We reverse and remand.
It is undisputed that the worker, a registered nurse, informed her supervisor that she had injured her back on the same day that the worker allegedly began feeling pressure in her lower back and tingling in her legs after turning and positioning patients. The worker completed her shift on the day she allegedly began to feel back and leg pain, and she worked the following day. The worker subsequently visited her personal physician, who had previously treated her for other back injuries. The worker received some pain medication, and an MRI was performed; that MRI showed that the worker had suffered a new injury to her back.
The worker submitted an application with the company for short-term disability benefits; the application stated that she had injured her back in the course of her employment, and her physician also noted on the application that her injury was work related. There was disputed testimony as to whether the company's benefits coordinator had instructed the worker to return to her physician in order to have him provide a letter stating that her back injury was not work related so that her claim could be processed as one for disability *Page 430 
benefits rather than for workers' compensation benefits, or whether the worker decided to do so on her own; the worker testified that she had also sought advice from an ombudsman employed by the State of Alabama[1] as to the type of benefits for which she should apply. It was undisputed that the company had a "72-hour policy" for reporting workers' compensation claims; the company's vice president of human resources testified the purpose of the policy was "to try to encourage people to get [the injury] reported as quickly as possible." The vice president of human resources further testified that the company would not reject a claim filed after 72 hours had passed.
Despite the evidence regarding the company's "72-hour policy" and the worker's allegation that she had relied upon the representations of the company to conclude that seeking disability benefits was her only option, the trial court found that the company had not told the worker that she could not file a claim for workers' compensation benefits but that it had failed to disclose to her that she could file such a claim. In Hensonv. Estes Health Care Center, Inc., 439 So.2d 74 (Ala. 1983), an employee sued her employer and the employer's workers' compensation carrier alleging fraud. The employee, acting pro se, had entered into a settlement of her workers' compensation claim with her employer and its workers' compensation carrier. She sued seeking to set aside the settlement on the ground that it had been procured by fraud, undue influence, and coercion. The trial court granted a motion to dismiss that had been filed by the employer and its workers' compensation carrier, concluding that no misrepresentation had been made to the employee. Our supreme court affirmed, stating in pertinent part:
 "The gist of [the employee's] argument is this: She claims that [the workers' compensation carrier] and [her employer] had a duty to disclose to her that she had a potential claim for her loss of earning capacity under [certain sections of our Workers' Compensation Act]. She claims that their failure to disclose is actionable concealment and is the type of fraud which requires the court to set aside her settlement.
 "A duty to disclose arises from a confidential relationship, of which there is no evidence in this case. Code 1975, § 6-5-102. [The employee] argues that she had no counsel for the settlement and relied entirely upon the [workers' compensation carrier's] claims representative for information. She claims that a duty to disclose arises in this situation. Her reliance upon [the workers' compensation carrier] and [her employer] to disclose what the [Workers' Compensation Act] says she may recover was unjustified. There is no duty to disclose laws which are accessible to and presumed to be known by all. Spry Funeral Homes, Inc. v. Deaton, 363 So.2d 786
(Ala.Civ.App. 1978)."
439 So.2d at 76 (emphasis added). Accordingly, we conclude that the trial court's finding that the company failed to make the employee aware of her options is not crucial to the resolution of the issues raised below and to this court on appeal.
In addition to the evidence described above, there was documentary evidence supplied by the company showing that, one week after receiving the worker's application for short-term disability benefits, the company's benefits coordinator wrote a letter *Page 431 
to the worker's physician specifically requesting more information in order to determine whether the worker's claim was to be considered as one for short-term disability benefits rather than as one for workers' compensation benefits. Approximately one week after the company's benefits coordinator sent the letter to the worker's physician, the physician wrote a letter that stated:
 "[The worker] is a 51-year-old female who has been under my care since 07/22/92 for multiple orthopedic problems. This letter serves as a clarification that [the worker] has been under my treatment for degenerative disc disease that began in January 1997. [The worker's] problem is not a sudden onset of pain due to a specific incident. The patient suffers pain due to a combination of gradual accrual, aggravated by the aging process, and the pushing and pulling of patients involved in the daily activities of her job."
As discussed in Judge Murdock's dissent, this letter does state that the worker's condition was caused by a combination of factors, including her work duties. The dissenting opinion then concludes that the physician did, therefore, state that the worker's injury was work related. However, the physician's deposition testimony made clear that the purpose of the letter was to allow the worker to receive disability benefits, for which she would not have been eligible had her injury been work related. The physician testified, in pertinent part, as follows:
 "Q. Now, [the worker] met with you at length in January of 2000 about whether she was going to file a [workers' compensation] claim or a disability claim, didn't she?
"A. That's correct.
 "Q. If you would, Doctor, would you read that in the record.
 "A. [The physician then read the above-quoted portion of the letter into the record.]
 "Q. What led up to that letter . . . was you met with her and discussed what her options were, didn't you?
 "A. Yes, I met with her, and she wanted me to write that letter.
 "Q. Let me make that clear. I know you weren't her lawyer, and you weren't making decisions for her, were you?
 "A. No. I met with her and discussed with her, and I disagreed with some of it, but this was what she wanted.
"Q. What she wanted to do?
"A. Right.
". . . .
 "Q. You had received this letter dated January 13th [the letter from the company's benefits coordinator requesting additional information], hadn't you, which is part of your records . . ., I believe? You may not remember getting that.
"A. I don't remember this.
 "Q. I will represent to you that that was in your file.
 "A. It probably was, and probably one of the nurses filled out a reply to it.
 "Q. Sequentially, it appears that that comes from [the company] asking for clarification. You then meet with [the worker] on the 17th, and ultimately your letter of January the 20th, 2000[,] was written, wasn't it?
"A. Correct.
 "Q. Has [the worker] ever come to you and asked you to withdraw what you put in this letter of January 20th?
"A. Come to me and asked me to withdraw it?
"Q. Yes, to say — *Page 432 
 "A. I have the dictation from January 17th which explains why in my interpretation this is here."[2]
After receipt of the letter from the worker's physician, the company processed the worker's claim as one for disability benefits. The worker thereafter received all the short-term and long-term disability benefits that were available to her and then began receiving Social Security disability benefits. The record on appeal contains documentary evidence showing that the worker's injury continued to be represented as one that was not work related so that she would be entitled to disability benefits.[3] The worker then filed this claim for workers' compensation benefits against the company, stating at trial that she decided to do so after she learned that her back condition was permanent. After conducting a hearing at which the aforementioned testimony and documentary evidence was admitted, the trial court found that the worker was permanently and totally disabled, and it awarded benefits accordingly. The company filed a postjudgment motion, which the trial court denied; the company then filed a notice of appeal to this court.
On appeal, the company contends that the trial court erred by awarding workers' compensation benefits to the worker because, it alleges, (1) the injury the worker suffered was not represented as a work-related injury when she applied for and received disability benefits; (2) the trial court used an incorrect burden of proof in awarding workers' compensation benefits; and (3) the worker did not give the company proper notice of the injury. Our review of this case is governed by the Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975, which states, in pertinent part: "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). Therefore, this court "will view the facts in the light most favorable to the findings of the trial court." Whitsett v. BAMSI, Inc.,652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds,Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala. 1996). Further, the trial court's factual findings are supported by substantial evidence if they are "supported by `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought *Page 433 
to be proved.'" Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989), and citing § 12-21-12(d), Ala. Code 1975). Our review of legal issues is without a presumption of correctness. Ala. Code 1975, § 25-5-81(e)(1); see also Ex parteTrinity Indus., 680 So.2d at 268.
Our resolution of the company's first argument is dispositive of this appeal. The company contends to this court, as it did below, that the worker should be estopped from seeking workers' compensation benefits when she and her physician previously represented that her injury was not work related in order for the worker to receive disability benefits. In Mid-South Electric Co.v. Jones, 848 So.2d 998 (Ala.Civ.App. 2002), this court was presented with a similar set of facts. In Jones, the worker sued her employer seeking workers' compensation benefits for an injury to her back, and the trial court awarded benefits. However, the worker had initially failed to disclose that her injury was one that was work related; the worker testified that she had done so because she wanted to return to work and because she wanted to be treated by her own physician and not one chosen by her employer. This court determined that the worker was barred from seeking workers' compensation benefits, and Judge Pittman, who authored the main opinion in which three judges concurred in the result, stated, in pertinent part:
 "We conclude that the employee cannot now, after making a deliberate decision not to elect workers' compensation coverage and to receive extensive medical treatment (including two surgeries) from a physician of her own choosing, decide to seek workers' compensation benefits. . . .
". . . .
 "The employee's deliberate decision to conceal the fact that she suffered a work-related injury defeats [the purposes of the Workers' Compensation Act's notice requirement] because the employer did not have the opportunity to investigate the employee's injury and did not have the opportunity to monitor and manage the employee's medical treatment. Therefore, we conclude that the employee is now barred from seeking workers' compensation benefits after she made a deliberate and calculated decision to seek medical treatment under her health insurance coverage and to take disability leave from work instead of filing a workers' compensation claim."
848 So.2d at 1000.
While notice is not as much an issue in this case as it was inJones — it is undisputed that in this case the worker told her supervisor that her back was hurting after she had turned and positioned patients — it nevertheless is undisputed that the worker decided to go to a physician of her own choosing and then made a "deliberate and calculated decision" to represent her injury as not being work related after clarification of whether her injury was work related was requested by the company to process her claim for disability benefits.[4] The worker has received all the short-term and long-term disability benefits that she was entitled to and is now receiving Social Security disability benefits. We conclude, as we did in Jones, that the worker is now barred from seeking workers' compensation benefits after choosing to apply for *Page 434 
and receive disability benefits rather than filing a workers' compensation claim. Accordingly, the trial court's judgment is due to be reversed, and the cause is remanded for the trial court to enter a judgment in favor of the company.
REVERSED AND REMANDED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., dissents, with writing, which YATES, P.J., joins.
[1] The purpose of the Department of Industrial Relations Ombudsmen Program is set out in § 25-5-290, Ala. Code 1975.
[2] The physician's dictation following the worker's January 17 visit stated, in pertinent part:
 "Discussed with [the worker]. She wonders whether it's work-related or not. Initially she gave me a history of working with patients and started having back pain radiating down the leg. . . . Previously I had treated her in [1997] with a 2-3 area [in] which she had some increasing degenerative changes. The question is if this is an acute injury or is it long term progressive aggravation of arthritic changes. Basically, it could be just an aggravation of her previous problems, but with the documented MRI, the bulging disc, I think may have previously been there, but it could have been exacerbated or caused by her activity of lifting and twisting on the patients on or about the 15th. Basically, she wants to go with the long term just with disability at the present time and not related to worker's comp and therefore, I will go along with this. . . ."
[3] The worker's physician testified during his deposition that he submitted monthly reports, which are contained in the record, in support of the worker's claim for disability benefits. Further, the record contains two separate forms signed by the worker's physician, one dated February 11, 2000, and another dated February 20, 2001, in which the physician checked an area corresponding to the answer "no" to the question, "Is condition due to injury or sickness related to the patient's employment?"
[4] As the dissent points out, the word "estoppel" is not contained in the Jones opinion; however, it is apparent to us that the theory was being employed by the above-quoted language from that opinion.