Cynthia Williams (the "worker") was employed at Union Yarn Mills, Inc. (the "company") from 1985 to May 1995. While employed by the company, the worker was a "doffer material handler," and her job involved removing tubes of yarn from the machine frames and placing them on an overhead rack. Each rack holds approximately 50 tubes of yarn, which weigh 7.5 pounds each. Once the rack was filled, she would take the rack downstairs via elevator for packing. The worker was responsible for "doffing" 12 machine frames and did so at least 3 times per day. *Page 72 
The worker began complaining of numbness and pain in her left hand and arm in late 1994. The company sent the worker to see Dr. Donald Casey, and it placed her in a light-duty position. However, she returned to her regular position in April 1995.
Even after referring the worker to other physicians and specialists for diagnostic testing, Dr. Casey could form no specific diagnosis. The worker quit her job in May 1995 and sought treatment from other physicians. Ultimately, she was diagnosed as suffering from carpal tunnel syndrome and underwent a carpal tunnel release surgery on each hand.
The worker sued the company, seeking workers' compensation benefits and reimbursement for medical expenses. After a trial, the trial court determined that the worker had failed to meet her burden of proof and had failed to prove that she had suffered a compensable injury. In addition, the trial court found that the worker's surgeries were unauthorized medical care for which the company is not responsible. The worker appeals. We affirm.
The review of this case is governed by the new Workers' Compensation Act, which states in pertinent part: "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). Therefore, this court "will view the facts in the light most favorable to the findings of the trial court." Whitsett v. BAMSI, Inc.,652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds, Ex parte Trinity Industries, Inc., 680 So.2d 262, 269
(Ala. 1996). Further, the trial court's finding of fact is supported by "substantial evidence" if it is "supported by 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' " Ex parte TrinityIndustries, 680 So.2d at 268-69 (quoting West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989), and citing § 12-21-12(d)). Our review of legal issues is without a presumption of correctness. Ala. Code 1975, § 25-5-81(e)(1);see also Ex parte Trinity Industries, 680 So.2d at 268.
In his opinion concurring in the result, Judge Monroe argues that Ex parte Trinity Industries overruled that portion ofWhitsett which states that we review the facts in the light most favorable to the findings of the trial court. He also argues that the statute provides for an objective standard of review. We respectfully disagree. Our supreme court has stated that it would view the facts "in the light most favorable to [the appellee], as [they] must be viewed under the applicable standard of review." Ex parte Trinity Industries, 680 So.2d at 270. Viewing the facts in the light most favorable to the appellee is the same as viewing them in the light most favorable to the findings of the trial court. We have viewed, and will continue to view, the facts in the light most favorable to the trial court because this court, as directed by the statute, "shall not reverse the trial court" if its findings are supported by substantial evidence. §25-5-81(e)(2).
As the trial court correctly stated, the worker claimed that she suffered from an injury resulting from a cumulative physical stress disorder. Under the Act, such an injury "shall be deemed compensable only upon a finding of clear andconvincing proof that [that injury] arose out of and in the course of the employee's employment." Ala. Code 1975, §25-5-81(c) (emphasis added). The statute defines "clear and convincing" proof as "evidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." Id. The statute further clarifies the "clear and convincing" standard as requiring a level of proof "less than beyond a reasonable doubt" but "greater than a preponderance of the evidence." Id.
The worker argues that she alleged that she had suffered a compensable injury and that she did not allege that she had carpal tunnel syndrome. She contends that the trial court, which did find specifically that she did not have carpal tunnel syndrome, viewed the evidence and the issues too narrowly. She says that the real issue was whether her undefined injury was a compensable *Page 73 
injury, i.e., whether it arose out of and in the course of her employment with the company. The company argues that the trial court's finding that the worker did not suffer a compensable injury is supported by the evidence. It strongly argues that the worker did not present clear and convincing proof that her injury was caused by her employment.
The doctors in this case testified by way of deposition. Dr. Casey was the first physician to whom the worker was referred by the company. Dr. Casey, who first saw the worker in November 1994, referred the worker to other doctors for testing for various diagnoses. Dr. Casey stated that certain tests, including nerve conduction tests, ruled out a diagnosis of carpal tunnel syndrome. According to Dr. Casey, he formed a working diagnosis of thoracic outlet syndrome, questionable cervical stenosis secondary to degenerative joint disease of the cervical spine. He stated that degenerative joint disease is a chronic condition that is a part of the natural aging process. According to Dr. Casey, the degenerative joint disease could account for some of the worker's complaints of pain in the arm and shoulder. In addition, he testified concerning several other possible diagnoses that had been ruled out by testing. He stated that, when he first saw the worker, he thought that the worker's injury was occupational, until proven otherwise.
Dr. Zenko Hrynkiw testified concerning his examination of the worker, whom he first saw in February 1995. He testified that the worker reported pain and numbness in her hands and weakness in her left hand. He testified that she also reported numbness in her feet. According to Dr. Hrynkiw, he performed an examination of the worker and performed certain tests. As a result of his examination and the testing, he concluded that the worker did not suffer from carpal tunnel syndrome and that she could return to full-duty work. He testified that, although the worker was to have a follow-up appointment with him in three months for further testing, she did not return. He stated that, based upon what the worker told him, he related the worker's injury to her employment.
Dr. James Strong testified that he saw the worker in July 1995, after she had terminated her employment with the company. He testified that the worker complained of numbness and pain in her hands. According to Dr. Strong, she also complained of shooting pains up her left arm into her neck and commented that her neck would hurt if she turned her head from side to side. Dr. Strong examined the worker and performed certain testing. His conclusion, he testified, was that she did not have carpal tunnel syndrome. He further testified that if the worker had had carpal tunnel syndrome it very likely would have improved once she left her employment, unless the problem was caused by some factor other than her employment. He further stated that he could not form a diagnosis based upon the worker's complaints and the results of several neurological tests. Dr. Strong stated that the best possible explanation for the worker's continued problems was musculoskeletal pain from neck and arm motion. According to Dr. Strong, musculoskeletal pain can be caused by improper posture, motion, repetitive motion, and arthritis. He stated that, when the worker first came in, he thought that some of her problems were related to her employment. He testified that he based that conclusion on the worker's subjective complaints and her history, and not on any objective medical findings. However, he noted that the worker's continuing problems and worsened pain could not be caused by her employment because she was no longer employed.
Dr. Victoria Masear, who treated the worker in September 1995, testified that she diagnosed the worker with carpal tunnel syndrome in both hands. After diagnostic therapy, which involved the injection of steroids into the worker's carpal tunnels, Dr. Masear performed carpal tunnel release surgery on each of the worker's hands. According to Dr. Masear, the worker's injury resulted from the repetitive use of her hands during her employment.
The worker testified at trial concerning the symptoms she experienced. She testified that she first began experiencing pain and numbness in her left hand in the fall of 1994. *Page 74 
She further testified that the pain and numbness later began in her right hand as well. According to the worker, the pain and aching in her hands was worse at night. She also testified that she developed pain in her arms and her shoulders and neck. She further testified that the carpal tunnel releases had relieved the pain in her arms and neck, but that her hands still occasionally experienced pain and discomfort.
The trial court found that the worker had failed to satisfy her burden of proof; that is, the trial court found that the worker had failed to prove by clear and convincing evidence that her injury, regardless of its diagnosis, arose out of or in the course of her employment. See § 25-5-81(c). To satisfy the clear and convincing standard, the worker's evidence must be of such weight as would "produce in the mind of the trier of fact a firm conviction" as to the facts sought to be proven and "a high probability as to the correctness of the conclusion." §25-5-81(c). The trial court could have found that the worker's evidence did not meet that standard because the physicians did not agree on a diagnosis or the cause of the worker's continued problems, and, therefore, the trial court could not form a firm conviction that the worker's injury was caused by her employment.
In light of both the requirement that this court "view the facts in the light most favorable to the findings of the trial court," Whitsett, 652 So.2d at 290, and the statutory mandate that we not reverse those findings if they are supported by substantial evidence, § 25-5-81(e)(2), we cannot conclude that the trial court erred by determining that the worker had failed to meet the heavy burden of medical causation imposed upon her by the statute. Therefore, the trial court's denial of workers' compensation benefits is affirmed.
The worker also appeals the trial court's finding that her carpal tunnel release surgeries were unauthorized medical treatment for which her employer is not responsible. As the trial court correctly stated in its judgment, an employer is not liable for medical treatment not authorized by the employer. Ala. Code 1975, § 25-5-77(a); Combustion Engineering,Inc. v. Walley, 541 So.2d 560, 561 (Ala.Civ.App. 1989). The exceptions to this rule include instances where (1) the employer neglects or refuses to provide necessary medical care, (2) where the notice of the need for medical care and a request for such care would be futile, and (3) where other circumstances justify the pursuit of alternative care by the employee. Walley, 541 So.2d at 561. None of those exceptions apply in this case.
The worker's testimony at the trial indicated that she "took it upon herself" to see a doctor after she had been treated by Drs. Casey and Hrynkiw. She first went to see Dr. Strong, who, according to the worker, failed to successfully treat her. She testified that a friend gave her Dr. Masear's name and that she went to her because there was nothing more Dr. Strong or the other doctors could do. In light of such testimony, the trial court's finding that the worker pursued treatment with Dr. Masear without authorization from the company is supported by substantial evidence and must be affirmed.
AFFIRMED.
YATES and THOMPSON, JJ., concur.
MONROE, J., concurs in the result.
ROBERTSON, P.J., concurs in the result only.