SMITH, Justice
(concurring in the rationale in part and concurring in the result).
I concur with the main opinion’s holding that the trial court’s factual findings are not due to be disturbed.
In this worker’s compensation case the employee, N.J.J., seeks worker’s compensation benefits as a result of injuries sustained in a sexual assault that occurred as N.J.J. arrived at work at an early hour. Employers often pay workers’ compensation to employees for injuries that occur as the result of an on-the-job assault — including sexual assaults. However, this case involves a unique exception to that rule found in our workers’ compensation law.
Not every injury that occurs on-the-job qualifies as a compensable injury under our workers’ compensation law. One such exception applies in this case: An “injury” for purposes of workers’ compensation “does not include an injury caused by the act of a third person ... intended to injure the employee because of reasons personal to him or her and not directed against him or her as an employee or because of his or her employment.” Ala.Code 1975, § 25-5-1(9) (emphasis added). Essentially, when a person assaults a worker for “personal” reasons and not because she is an employee or because of her employment, then our workers’ compensation law does not require the employer to provide benefits.
In this case N.J.J. was a manager of a Burger King fast-food restaurant owned by her employer, Wesfam Restaurants, Inc. N.J.J. had recently returned to work after suffering a back injury. In the early morning hours of August 11, 2002, N.J.J. was brutally attacked and sexually assaulted while attempting to enter the restaurant.[3]
N.J.J. identified a patron of the restaurant, D.S., as the lookout for the attackers. *459 N.J.J. told police investigators that although she recognized D.S., who had been barred from the restaurant, she had not seen him “in a couple of months.” At trial, however, N.J.J. testified that “in August of 2002,” “shortly” before the attack, she had barred D.S. from the restaurant because he had set a napkin holder on fire.[4] When questioned by police, D.S. produced an alibi for the night of the attack. Additionally, the police records in the criminal investigation of the rape, which were admitted into evidence without objection, contain the results of three tests conducted during a polygraph examination of D.S. performed by the Huntsville Police Department. The results indicated “no deception” when D.S. was asked if he had participated in the assault. Apparently, no charges were filed against D.S., and N.J.J.’s attackers are still at large.
According to N.J.J.’s complaint, she suffered pain and other psychological and physical injuries as a result of the assault. Wesfam paid N.J.J. temporary-total-disability benefits until September 2004. When Wesfam’s workers’ compensation carrier eventually stopped paying benefits, N.J.J. filed the underlying action seeking additional benefits.
At trial, Wesfam argued that the attack against N.J.J. was motivated by personal reasons. Wesfam thus argued that there was no “injury” as defined by § 25-5-1(9) and that worker’s compensation benefits were not due to be paid. Specifically, Wesfam pointed to evidence indicating that N.JJ.’s attackers said to her at the beginning of the attack that “they were going to show [her] what they do to nigger lovers” and repeated similar statements during the attack.[5]
Here, the trial court was called upon by N.J.J. and Wesfam to determine whether the attack against N.J.J. resulted from “personal” reasons and not because of N.J.J.’s employment. Because this determination of fact was made by the trial judge based in part on live in-court testimony, the ore tenus rule applies. Thus, the trial court’s findings are presumed correct:
“ ‘ “The trial court heard this case without a jury. Where evidence is presented to the trial court ore tenus, the court’s findings of fact are presumed correct; its findings will not be disturbed except for a plain and palpable abuse of discretion.” ’ ”
Ex parte Squires, 960 So.2d 661, 664 (Ala.2006) (quoting Squires v. City of Saraland, 960 So.2d 651, 656 (Ala.Civ.App.2005), quoting in turn Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994)). Furthermore, in a worker’s compensation case, this Court “must view the facts in the light most favorable to the findings of the trial court.” Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003). Because the trial court’s factual findings are presumed correct under the ore tenus rule, this Court cannot conclude that the trial court was wrong unless it can say that those findings “are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Jasper City Council v. Woods, 647 So.2d 723, 726 (Ala.1994).” Carquest Auto Parts & Tools of Montgomery, Alabama, Inc. v. Waite, 892 So.2d 422, 424 (Ala.Civ.App.2004). Finally, the trial court’s findings of fact are not to be disturbed if those findings are supported by substantial evidence. Williams v. Union *460 Yarn Mills, Inc., 709 So.2d 71, 72 (Ala.Civ. App.1998).
It was N.J.J.’s burden at trial to prove that she sustained an injury for purposes of the Workers’ Compensation Act, Ala. Code 1975, § 25-5-1 et seq. Additionally, it was N.J.J.’s burden to establish that the injury was not the result of “reasons personal” or that the attack was directed against her as an employee or because of her employment. In entering a judgment for Wesfam, the trial court stated:
“After due consideration of all of the evidence and having observed the demeanor of [N.J.J.] from the witness stand and in the courtroom and having made due inquiry into [NJ.J.’s] claim and the credibility and defenses of [Wes-fam], the court makes the following determination:
[[Image here]]
“... The Court finds that based upon the evidence presented at trial, the assault of [N.J.J.] was motivated by reasons personal to the attackers and was not directed against [N.J.J.] as an employee of [Wesfam] or because of her employment with [Wesfam].”
On appeal, the Court is called upon to decide if the trial court erred in determining:
1. That the attackers intended to injure N.J.J. because of “reasons personal,” and
2. that the attack was not directed against N.J.J. as an employee of Wes-fam or because of her employment with Wesfam.
The evidence presented in this case is sparse: N.J.J. briefly testified at trial, and the trial court accepted into evidence— without objection — certain police records and medical records. After reviewing the record, I cannot conclude that the trial court’s findings “are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.”
As to the first finding, testimony at trial indicated that the attack on N.J.J. was racially motivated. As to the second factor, the Chief Justice notes that the record contains substantial evidence indicating that N.J.J.’s employment, which placed her in the restaurant parking lot in the early morning hours, exposed N.J.J. to an increased risk of attack. Specifically, the Chief Justice finds that “it can readily be inferred” that the parking lot was a place where N.J.J.’s attackers could more easily carry out the assault.
However, in reviewing ore tenus findings in a worker’s compensation case, this Court is to “view the facts in the light most favorable to the findings of the trial court,” Professional Business Owners, 867 So.2d at 1102, and not to make inferences of fact that would call the trial court’s findings into question. Therefore, I cannot make the inference the Chief Justice makes that N.J.J.’s employment exposed her to an increased danger of assault. Further, N.J.J. testified that the area where she was initially accosted was “well-lit,” requiring her attackers to remove her to a more concealed place. The police report indicated that the “parking lot” in which the attack took place was lighted by artificial lighting. Additionally, there is no evidence indicating that N.J.J. was required to report to work at such an early hour or that Wesfam even knew she was doing so. An assistant manager at the restaurant, who was interviewed by the police regarding the attack, indicated that N.J.J. “normally” did not arrive at work until 5:00 a.m., when two employees would open the restaurant. Another employee stated that N.J.J. changed her schedule the day before the attack so that she would start work at 4:00 a.m. instead of *461 5:00 a.m. These facts, viewed with the presumption of correctness accorded to the findings of the trial court, tend to indicate that the parking lot posed no increased danger of assault and that N.J.J.’s employment did not require her to be in the parking lot at that time.
I voted to grant certiorari review in this case because I was concerned that the trial court erred in determining that the attack was not directed against N.J.J. because of her employment. Specifically, it appeared to me during this Court’s preliminary examination of the petition for certiorari review that D.S. could have participated in the attack because N.J.J. had banned him from the restaurant or that N.J.J.’s employment had contributed to the attack because she was required to be in a dangerous place when opening the restaurant. In this case, however, the trial court found otherwise. There is evidence to support its conclusion. Although I might have decided the facts differently, the standard of review does not allow me to substitute my own judgment for the trial court’s.
I am convinced that a female employee who is raped while reporting to work during early morning hours can demonstrate at trial that her job exposed her to an increased risk of an attack. Given that the trial court’s findings in this case are presumed correct and construing the facts in a light most favorable to the trial court, I cannot conclude that the trial court’s decision is plainly and palpably wrong, clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Therefore, I must concur to quash the writ.

. The time of the attack is unclear from the record. N.J.J. testified at trial that she left home at 3:30 a.m. and that she lived nearby. Police investigation records indicate that N.J.J. stated that she arrived at the restaurant at a "little before” 4:00 a.m. The police report indicates that N.J.J. was assaulted after 4:00 a.m.

. The trial court's order inexplicably appears to state that this incident occurred “earlier that day.”

. The record indicates that N.J.J. is white and her husband is black.