Martin Sharron sued his employer, Statewide Painting Company, on January 18, 1995, seeking payment of medical expenses related to the treatment of injuries he had sustained on May 4, 1994, when, he alleges, he was bitten by a brown recluse spider during the course of his employment. Following an ore tenus proceeding, the trial court, on April 18, 1996, found that Sharron's injuries arose out of and in the course of his employment with Statewide and ordered Statewide to pay any reasonable unpaid medical expenses incurred by Sharron for treatment of his injuries. Statewide appeals. *Page 519 
At the outset, we note that because of the date of Sharron's injury this case is governed by the new Workers' Compensation Act. The new Act provides that an appellate court's review of the proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. §25-5-81(e)(2), Ala. Code 1975. Our supreme court "has defined the term 'substantial evidence,' as it is used in §12-21-12(d), to mean 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' " Ex parte Trinity Industries, Inc., 680 So.2d 262,268 (Ala. 1996), quoting West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989). Further, we "will view the facts in the light most favorable to the findings of the trial court." Whitsett v. BAMSI, Inc., 652 So.2d 287, 290
(Ala.Civ.App. 1994). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts,Inc., 655 So.2d 1012, 1014 (Ala.Civ.App. 1995).
On May 4, 1994, Sharron was preparing to spray paint a two-story storage building at a sewage treatment plant in LaGrange, Georgia. While descending a five-foot stepladder, Sharron experienced a pain between the top of his blue jeans and the bottom of his T-shirt. He described the pain as penetrating his right hip/buttock area and feeling like a "piece of wire, a nail, a bite," or a "needle, bumblebee bite, wasp sting." Because Sharron was holding a roll of tape and steadying himself on the ladder with his right hand, he reached around with his left hand and swatted at the area where he had felt the pain. He stated that he did not feel anything on his finger or hand at the time. Sharron continued to work for the remainder of the day.
On Thursday, May 5, Sharron reported to work; however, around 10:00 a.m. he reported to Mike Bull, the general superintendent, that he was not feeling well, and he then returned to his motel room. On Friday, May 6, Sharron once again reported to Bull that he was not feeling well. He stated that he was in a great deal of pain and that his hip had swollen. That same day, Sharron was treated by Dr. Cecil Major at the Clark-Holder Clinic. Dr. Major diagnosed Sharron with cellulitis (infection) of the buttock and prescribed antibiotics, warm compresses, and pain medication. Dr. Major did not see Sharron again; Sharron returned to Birmingham that weekend.
On Wednesday, May 11, Sharron noticed a white bump above the fingernail on the ring finger of his left hand; the finger had begun to itch. The following day, the finger began to turn black, swell, and become painful. Sharron was treated on Monday, May 16, by his personal physician, who informed him that the condition of his finger was serious and that he needed to go to a hospital. Sharron was admitted to a hospital by Dr. Paul Sauer on May 17. Dr. Sauer initially noted that Sharron had cellulitis and swelling in the finger. He also noted that the area on Sharron's right buttock showed "full thickness" necrosis (dead tissue) and an eschar (dead skin); however, he noted that the area on the buttock was improving and that the condition of the finger was more serious. Sharron was initially treated with antibiotics; however, he did not respond to this treatment. On May 18, Dr. Sauer performed an emergency surgical debridement of most of the skin and subcutaneous tissue overlying the dorsum of the finger. Dr. Sauer noted that there was a great deal of pus on the dorsum of the finger and that the soft tissue was necrotic. Dr. Sauer performed a second debridement and a skin graft on May 23. Sharron was discharged from the hospital on May 25. Sharron made several follow-up visits to Dr. Sauer, with the last visit being on September 22, 1994. At that time, Dr. Sauer noted that Sharron's finger was doing very well.
Statewide paid Sharron benefits for three weeks of temporary total disability and paid all medical expenses related to the hip/buttock condition. All of the approximately $29,720 medical expenses related to the treatment of the finger remain unpaid. *Page 520 
Sharron seeks only the payment of these medical expenses.
Statewide contends on appeal that Sharron failed to establish the required causation between his employment and his injury that would entitle him to recovery under the Act. The trial court's order reads, in part, as follows:
 "There was severe necrosis and infection in [Sharron's] finger which led to two surgeries. Dr. Sauer says it is impossible to tell for sure exactly what caused the [infection] but that the finger and hip problem developed at the same time. The finger simply had been developing during the period. From all the evidence, it is apparent that, and the Court finds, that regardless of whether Mr. Sharron's problem with his finger was caused by an insect injecting venom or carrying infection from the surface of the skin, or whether some other object penetrated his skin, the hip [condition for which Sharron] has been completely compensated and the finger [condition for which Sharron] has not been compensated, arose out of and in the course of his employment with [the] defendant on May 4, 1994."
For an injury to be compensable under our Workers' Compensation Act, the employee must establish both legal and medical causation. Ex parte Moncrief, 627 So.2d 385 (Ala. 1993). "Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought." Id., at 388. To establish medical causation, an employee must produce substantial evidence tending to show that the exposure to the risk or conditions was in fact a contributing cause of the injury. Ex parte TrinityIndustries, Inc., 680 So.2d 262 (Ala. 1996); Ex parte Valdez,636 So.2d 401 (Ala. 1994). Medical causation may be found by the trial court without testimony from medical doctors. Exparte Price, 555 So.2d 1060 (Ala. 1989). The totality of the evidence, including both lay and expert testimony, may satisfy a showing of medical causation. U.S. Steel, A Division of USXCorp. v. Nelson, 634 So.2d 134 (Ala.Civ.App. 1993).
The evidence indicates that Sharron felt a penetrating pain on his right hip/buttock, which he described as a bite or sting. He testified that he reached around with his left hand to brush at the area where he had felt the pain; he stated: "I felt like the finger got pretty close to [the area]. If it hit right on the money, I don't know. It could have been past it, above it, below it. But it was in that general area because actually the mark is still on the hip." Dr. Major testified by deposition that he has seen a number of brown recluse spider bites in his practice. He described them as typically beginning with an onset of infection, similar to a "boil"; then after a couple of days, he said, the area of the skin where the venom was injected becomes necrotic, turns black, and sloughs off. Dr. Major stated that the resulting infection would not "migrate" from one place to the other. He did state, however, that the infection could spread by scratching the infected area and then scratching another area. When asked if it was possible that a spider might bite someone who was brushing it away, Dr. Major stated that it was unlikely that a spider would bite someone twice; however, he also stated that people do not normally know when a spider has bitten them. Finally, Dr. Major stated that a spider might have bitten Sharron.
One week after the initial injury, Sharron began having problems with his finger; his symptoms and the characteristics of his problems were consistent with a spider envenomation, as described by Dr. Major. Dr. Sauer testified that recluse spider bites do not necessarily look like the condition that had afflicted Sharron's finger; however, he did state that the area of necrosis was consistent with a recluse spider bite. Additionally, Dr. Major diagnosed Sharron's hip/buttock with swelling and infection, and Dr. Sauer later noted that the skin around the infection had become necrotic; all of these conditions are consistent with a recluse spider bite.
Dr. Sauer testified that it was impossible to determine exactly what had caused the condition in Sharron's finger; however, he did state that it could have been a spider *Page 521 
envenomation. When questioned as to whether the original infection in the hip/buttock could have "migrated" to the finger, Dr. Sauer stated that it was unlikely. He further stated that there could have been two simultaneous bites or two bites occurring at about the same time, which did not fully manifest symptoms at the same time. Dr. Sauer testified that the condition of the finger on the day he first saw Sharron was consistent with the period of time that had elapsed from the date of the original injury at work. He stated that the finger condition did not just lie dormant but was "smoldering" or "brewing" from the date of the original injury up until Sharron began experiencing problems with it, and he stated that the antibiotics originally prescribed by Dr. Major kept the finger condition in check until it finally manifested itself.
We are mindful that the Workers' Compensation Act is to be liberally construed to accomplish its beneficent purposes and that doubts must be resolved in favor of the employee.Holmes v. Gold Kist, Inc., 673 So.2d 449 (Ala.Civ.App. 1995). We are also mindful that we must view the evidence in the light most favorable to the findings of the trial court. Whitsett,supra, Therefore, after carefully considering the totality of the evidence of this case, along with the principles of law set out above, we conclude that the trial court's findings of fact are supported by substantial evidence and that those findings support its conclusion that Sharron established both legal and medical causation.
Sharron's request for an attorney fee on appeal is denied. See Cowgill v. Bowman Transportation, Inc., 587 So.2d 1000
(Ala.Civ.App. 1991), cert. quashed, 587 So.2d 1002 (Ala. 1991).
AFFIRMED.
MONROE, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.