[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 107 
Tenax Manufacturing Alabama, LLC, appeals from a judgment awarding Henry Holt workers' compensation benefits for a 60% permanent partial disability. On appeal, Tenax argues that the trial court erred by determining (1) that Holt had proved medical causation and (2) that Holt had suffered a 60% loss of earning capacity as a result of an on-the-job injury.
At the time of trial, Holt was a 28-year-old high-school graduate. He had enrolled in a paramedic-training course in junior college and had maintained a "B" average, but he had dropped out after one quarter. His work history consisted of a series of manual-labor jobs, all of which he had held for less than a year before he quit. In July 2003, Holt began working at Tenax, where he had three different jobs — as a needle technician, a dye-stand operator, and a winder operator. His duties were rotated on an hourly basis. As a needle technician, Holt was required to watch fabric running through a machine to make sure that it ran straight between the needles. As a dye-stand operator, he was required to watch nylon fibers flowing through a dye machine and, if one of the fibers came out of its suction tube, to cut the fiber and replace it in the tube. As a winder operator, Holt was required to watch a winder machine, change rolls of fabric when the roll was complete, and wrap the completed roll in plastic.
On June 29, 2004, Holt was wearing rubber-soled shoes supplied to him by Tenax and standing on a rubber mat in front of the dye-stand machine when he slipped in a puddle of water that had collected as a result of condensation dripping from the machine. Holt testified that he fell and landed on his "tailbone," after which he hit his back and his head. He was alone at the time, and he lay on the floor until a coworker arrived to help him up. He was later transported to the emergency room of a local hospital where he was treated by Dr. Mark Roberts, who prescribed a pain-killer and a muscle relaxer and ordered X-rays of Holt's lumbar spine. The X-rays revealed:
 "FINDINGS: The vertebral body heights, intervertebral disc spaces and the alignment of the vertebrae are maintained. No fracture, subluxation, or other bone abnormality is identified."
When he continued to experience pain and muscle spasms in his back, Holt returned to Dr. Roberts, who ordered an MRI of the lumbar spine. That test, performed on July 2, 2004, revealed:
 "FINDINGS: Vertebral alignment and disc spaces are maintained. The discs are hydrated with no evidence of significant bulge or herniation. The neural foramina are all patent. Surrounding bony and soft tissue structures are unremarkable."
Dr. Roberts returned Holt to work on light duty. Tenax assigned Holt to check for holes in fabric and made a chair available to him so that he could sit or stand as needed.
Holt returned to Dr. Roberts on July 6, 2004, still complaining of back pain. Dr. Roberts referred him to physical therapy. On August 16, 2004, the physical therapist reported to Dr. Roberts that, after 16 visits, Holt's main complaint was "7/10 pain at his tailbone at night." However, the physical therapist also reported that, "[d]uring the day, Holt states that his pain is `barely noticeable'" and that he is "ready to go back to work." The physical therapist provided the following assessment:
 "[It has] been difficult to link [Holt's] treatments to his ability or non-ability to *Page 109 
perform certain PT specific activities. [Holt's] intensity while performing specific exercises has remained inconsistent. . . ."
During his next visit to Dr. Roberts, Holt reported that there had been little or no improvement in his condition. Dr. Roberts referred Holt to Dr. Jeffrey G. Pirofsky, an osteopath/physiatrist who specializes in physical medicine and rehabilitation. Dr. Pirofsky first saw Holt on August 20, 2004. Holt related a history of a work-related fall, pain with walking, and a dull ache in his lower back. He denied any radiating pain, numbness, or tingling in his legs. Dr. Pirofsky examined Holt and ordered X-rays, which revealed a slight curvature of the spine and "some minor de-generative aging changes." Dr. Pirofsky testified by deposition that Holt displayed "exaggerated pain behavior to superficial touch," which he explained by saying that Holt's response "didn't match what [he] would have expected for the light touch that was performed by [him]." Dr. Pirofsky also testified that it was difficult to assess Holt's hip flexion by manipulation because of his "guarding and pain complaints," but when he tested hip flexion another way, by a straight-leg raising test, the result was negative. Dr. Pirofsky said that the "strength portion of the examination was not consistent with [Holt's] ability to walk and get up on his toes and heels." Dr. Pirofsky's diagnosis was "low back pain, lumbar spondylosis, which is the degenerative portion, and cannot rule out symptom magnification." He explained "symptom magnification" by saying that there were "inconsistencies during the examination [such that Dr. Pirofsky] did not feel that Mr. Holt was being totally forth-coming." Dr. Pirofsky ordered that Holt be given an epidural cortisone injection, and he prescribed the following medications: Ultracet, a pain reliever; Robaxin, a muscle relaxer; and a Medrol (cortisone) "dosepak."
Holt continued to complain of back pain at a follow-up visit on September 7, 2004. Dr. Pirofsky's office notes indicate that he could "not explain [Holt's] lack of improvement based upon treatment with physical therapy, medications, and lumbar epidural. He has also had adequate time to heal based upon no diagnostic abnormalities." Dr. Pirofsky referred Holt to Dr. F. Donovan Kendrick, a neurosurgeon, for a second opinion. Dr. Kendrick, who saw Holt on September 30, 2004, reviewed Holt's X-rays and MRI and found "no evidence of disc herniation, nerve root compression or other abnormality." He concluded that Holt's "back pain is not related to any abnormality within the lumbar spine but may be perhaps soft tissue in origin."
Holt was then referred for a functional capacities evaluation ("FCE"), which was performed on October 26, 2004. The results of the FCE were reported to Dr. Pirofsky. Dr. Pirofsky testified that Holt's FCE was invalid because Holt had scored only 57% on the validity criteria built into the test and a score of at least 81% is required to ensure validity. To achieve a score of 81%, the subject must exert maximal effort on a consistent basis.
Dr. Pirofsky last saw Holt on November 2, 2004, at which time Holt was still complaining of back pain, but, in addition, he complained for the first time of pain radiating into his left leg. Dr. Pirofsky testified that he could not explain that complaint in light of a normal MRI and the treatments Holt had received. He concluded that he had "nothing else to offer" Holt, placed him at maximum medical improvement ("MMI"), gave him a physical-impairment rating of "zero," and released him to return to work without restriction. When Holt was returned to "full duty" at *Page 110 
work, he left his employment at Tenax and did not apply for other employment.
After Dr. Pirofsky released him, Holt consulted his family physician, Dr. Stanley Barnes of Evergreen, complaining of back and leg pain. Dr. Barnes examined Holt and ultimately referred him to Dr. Robert L. White, a Mobile neurosurgeon. Dr. White testified by deposition that he saw Holt one time, on December 17, 2004. He took a history from Holt and examined him. He also reviewed Dr. Barnes's medical records pertaining to Holt as well as Holt's MRI. He did not, however, have the medical records of Dr. Roberts, Dr. Pirofsky, or Dr. Kendrick. Based on his review of the MRI, Dr. White thought that Holt had sustained either an "upward herniation of the L5/S-1 disc into the body of the vertebra of L5 with adjacent inflammatory changes, or a compression fracture of the inferior body of L5 by about 20 percent with adjacent inflammatory changes."
Dr. White explained that he thought that, as a result of Holt's fall at work, the lower portion of the last vertebrae in Holt's lower back had "caved in about 20 percent of its normal volume," which he characterized as a "low degree of compression." Dr. White assigned Holt a physical-impairment rating of 5% to the body as a whole and said that there was "no surgical indication for repair" 6 months after the injury. Instead, the injury — which, Dr. White said, was considered a permanent one — should be managed conservatively through a physical-rehabilitation program. Dr. White also testified that the MMI date for a compression fracture was usually about 12 months after the injury and that Holt, therefore, had not yet reached MMI. Thus, Dr. White said, he was not surprised at the results of Holt's FCE, which had been performed only four months after the injury.
After he filed his complaint seeking workers' compensation benefits, Holt asked Tenax for another treating physician, and, from a list of four doctors, Holt chose a Dr. Jeff D. Wade at Alabama Orthopaedic Center, P.C., in Birmingham. The record indicates that Holt saw Dr. Wade on August 8, 2005. Holt testified that Dr. Wade did not examine him. Instead, Holt said, Dr. Wade reviewed his MRI and stated that "he didn't see anything wrong with [Holt]," after which, Holt said, Dr. Wade "brushed [him] off and sent [him] right on out of [the office]" before Holt had finished "filling out [his] paperwork." The record contains the following from Dr. Wade's office notes:
 "IMPRESSION AND PLAN: I have indicated to [Holt] that he has really tried all of the conservative treatment options for his back and unless he would want to try some more Epidurals through pain management, I really wouldn't have anything else to offer him. I would basically say that based on his MRI he can be released to full duty and placed at MMI but he doesn't seem to be happy with this and will probably want another opinion as well. I have again told him that as a surgeon I really have nothing else to offer him based on his normal structural MRI and would advise him to seek out a pain specialist if he so desires."
Holt testified at trial that, after he saw Dr. White, he received no further treatment from any physician other than Dr. Barnes, his family doctor, who continues to prescribe Lortab and Flexeril for him. Holt said that he took at least one Lortab every day and that sometimes he took two or three Lortabs a day. He stated that he had not applied for any other jobs because he was in pain and he knew he could not work. He testified that he could stand for no longer than 20 minutes before his back started hurting. He also had problems *Page 111 
with lifting; he stated that he could not lift his daughter, who weighed about 40 pounds, without pain. In addition, he said that he could not walk much without his legs hurting.
Holt testified that he had good days and bad days. On a good day, he said, he was able to drive, cut his grass with a riding lawn mower for awhile, go shopping, and do light housework. On a bad day, he said, he had to stay inside sitting or lying down. Holt testified that he cared for his four-year-old daughter every afternoon until her mother returned from work. When asked if he could perform the physical requirements of any of the jobs he had previously held, Holt answered in the negative. When asked whether there was "any type of job" that he thought he could do, Holt stated that he was "not sure."
 Standard of Review
In reviewing the standard of proof . . . and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." § 25-5-81(e)(1), Ala. Code 1975. "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81(e)(2), Ala. Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989). Therefore, this court "will not reverse the trial court's finding of fact if that finding is supported by substantial evidence." Exparte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala. 1996).
 Medical Causation "`For an injury to be compensable, it must be "caused by an accident arising out of and in the course of the employee's employment. § 25-5-51, Ala. Code 1975. The phrase "arising out of an employee's employment requires a causal connection between the injury and the employment. The phrase "in the course of the employee's employment refers to the time, place, and circumstances under which the accident occurred. In accidental cases, i.e., those involving a sudden and traumatic event, an employee must produce substantial evidence tending to show that the alleged accident occurred and must also establish medical causation by showing that the accident caused or was a contributing cause of the injury. Medical causation may be found by the trial court without testimony from medical doctors. The totality of the evidence, including both lay and expert testimony, may satisfy a showing of medical causation.'"
Hooker Constr., Inc. v. Walker, 825 So.2d 838, 842
(Ala.Civ.App. 2001) (quoting Pair v. Jack's Family Rests.,Inc., 765 So.2d 678, 681 (Ala.Civ.App. 2000)).
Tenax contends that the trial court's determination of medical causation is not supported by substantial evidence. It does not dispute the fact that Holt suffered a work-related accident; it disputes the fact that the accident caused a back injury. Essentially, Tenax argues that the trial court's reliance upon Dr. White's opinion, rather than upon the opinion of four other physicians who reviewed Holt's MRI — Dr. Roberts, Dr. Pirofsky, Dr. Kendrick, and Dr. Wade — was misplaced. Tenax maintains that Dr. White's opinion that Holt suffered a compression fracture to a vertebra in his lower back was less credible than the opinions of the other physicians who reviewed Holt's MRI and found nothing wrong with his back *Page 112 
because (1) Dr. White saw Holt only once, (2) Dr. White did not obtain a detailed history regarding the nature of Holt's fall at work, and (3) Dr. White's diagnosis was somewhat uncertain because he described two possible mechanisms by which the fall could have caused the compression fracture.
We do not consider those arguments persuasive for several reasons. First, it appears that, of the four physicians who rendered an opinion that Holt's MRI showed no back injury, two physicians — Dr. Kendrick and Dr. Wade — had also seen Holt only once. Moreover, the relevant inquiry is which physician correctly interpreted Holt's MRI, an inquiry that is not necessarily dependent upon repeated access to the patient. In addition, all the physicians who reviewed Holt's MRI knew that he had fallen at work and landed on his back. Finally, Dr. White's dual-mechanism diagnosis was not uncertain. Although he described two mechanisms by which the vertebra could have "caved in," he stated that either mechanism would cause a compression fracture.
Whether the employment caused an injury is a question of fact to be resolved by the trial court. See Ex parteValdez, 636 So.2d 401, 404 (Ala. 1994); StatewidePainting Co. v. Sharron, 693 So.2d 518 (Ala.Civ.App. 1997). On this issue, the trial court made the following findings of fact:
 "The Court determines that the injuries to Henry Holt's back and his L5 compression fracture were caused by the work-related accident that occurred on June 29, 2004. . . .
 "The Court is aware that this determination is in conflict with the testimony of Dr. Pirofsky and Dr. Wade, however the Court is not bound by expert testimony, even on medical conditions, especially when the medical doctors are in disagreement regarding the extent and effects of an injury. The Court does not find Dr. Pirofsky's and Dr. Wade's testimony persuasive.
 "The Court is instead persuaded by the credible and cogent description of the injuries by [Holt] and by the medical records and testimony of Dr. Robert White."
"Conflict in the evidence as to medical causation is an issue of fact to be resolved by the trial court, not by the appellate courts." ATEC Assocs., Inc. v. Stewart,674 So.2d 1296, 1298 (Ala.Civ.App. 1995).
 The Disability Determination
Section 25-5-57(a)(3)g., Ala. Code 1975, provides, in pertinent part:
 "For all . . . permanent partial disabilities not . . . enumerated [in the compensation schedule of § 25-5-57(a)], the compensation shall be 66% percent of the difference between the average weekly earnings of the worker at the time of the injury and the average weekly earnings he or she is able to earn in his or her partially disabled condition. . . ."
The statute requires that compensation for an unscheduled permanent partial disability be based upon loss of earning capacity. Discovery Zone v. Waters, 753 So.2d 515, 517
(Ala.Civ.App. 1999). "Lost earning capacity is not determined by a worker's loss of actual earnings but by his loss of ability to earn." Wilde v. Taco Bell Corp., 531 So.2d 918, 919
(Ala.Civ.App. 1988) (citing Florence Enameling Co. v.Jones, 361 So.2d 564 (Ala.Civ.App. 1978)).
Tenax contends that Holt failed to present substantial evidence that could serve as a basis for the trial court's finding that Holt suffered a 60% reduction in his earning capacity. It points out that no vocational expert testified to Holt's loss of ability to earn; that no physician placed any *Page 113 
physical restrictions on Holt; that Holt exaggerated his symptoms and failed to exert maximum effort on his FCE; that Holt never attempted to apply for another job after leaving Tenax; and that Holt admitted that he cuts his grass, does light housework, and cares for his four-year-old daughter every afternoon until the child's mother returns from work.
Assessing the extent of an employee's disability is within the trial court's discretion; the trial court's decision will not be disturbed on appeal if there is evidence to support it.Golden Poultry Co. v. Staggs, 660 So.2d 1348, 1352
(Ala.Civ.App. 1995). In reaching its decision, the trial court considers all the evidence, including its own observations, and interprets what it has heard and observed according to its own best judgment. Id. The trial court is able to observe the worker and to judge for itself the extent of his disability. Sprinkle v. Baldwin Pole Leasing,733 So.2d 444, 445 (Ala.Civ.App. 1999).
In determining the extent of loss of earning capacity, the trial court may properly consider "`"such factors as age, education, past work history, and the effect of the injury on the employee's earning ability."' G.UB.MK. Constructors v.Traffanstedt, 726 So.2d 704, 708 (Ala.Civ.App. 1998) (quoting Paschel v. Emro Mktg. Co., 632 So.2d 971, 973
(Ala.Civ.App. 1993))." Dolgencorp, Inc. v. Hudson,924 So.2d 727, 734 (Ala.Civ.App. 2005). In Tid-well Industries,Inc. v. Kennedy, 410 So.2d 109 (Ala.Civ.App. 1982), this court noted that "[t]he only type work [the employee] had ever performed was manual labor" and that, "[w]ith this back injury, [the] employee's future as a manual laborer was obviously very limited." 410 So.2d at 111. We held that evidence of "[t]he employee's lack of education and vocational training coupled with the medical testimony [of a 20% physical impairment] [was] clearly sufficient evidence to support the trial court's judgment regarding the employee's [40%] loss of ability to earn". Id.
"[W]hile medical testimony as to an employee's degree of impairment is probative, as is the testimony of a vocational expert, it is well settled that neither is required in order for the trial court to determine an employee's degree of impairment." Ex parte Northam, 689 So.2d 854, 857
(Ala. 1996). A finding of loss of earning capacity can be made without expert testimony. See Ex parte Ellenburg,627 So.2d 398 (Ala. 1993), in which our supreme court held:
 "It is settled law that a trial court in a workers' compensation case may make a finding of permanent total or partial disability without even receiving expert testimony. Stewart v. Busby, 51 Ala.App. 242, 284 So.2d 269 (1973); Bankhead Forest Industries, Inc. v. Lovett, 423 So.2d 899
(Ala.Civ.App. 1982). The reasoning behind this rule is stated in Stewart v. Busby, quoting 3 Larson, Law of Workmen's Compensation, § 79.83, as follows:
 "`"In arriving at the rule permitting awards in the absence or even in contradiction of medical testimony, two underlying reasons may be discerned: The first is that lay testimony, including that of claimant himself, is of probative value in establishing such simple matters as the existence and location of pain, the sequence of events leading to the compensable condition, and the actual ability or inability of claimant to perform his work; . . ."
 "`Clearly, such a determination is not just a medical question, but is a complex concept involving several combinations of questions as to the *Page 114 
claimant's inability to perform his job, and inability to get suitable work.'
"51 Ala.App. at 246, 284 So.2d at 273." Ellenburg,627 So.2d at 399.
Moreover, even if expert testimony had been presented, "the trial court [would] not [have been] bound by the opinions of experts, and it [could have] consider[ed] its own observations and the worker's testimony concerning pain and discomfort in determining the extent of a worker's disability."Musgrove Constr., Inc. v. Malley, 912 So.2d 227, 254
(Ala.Civ.App. 2003) (opinion on return to remand) (citingCompass Bank v. Glidewell, 685 So.2d 739, 741
(Ala.Civ.App. 1996); Jim Walter Res., Inc. v. Budnick,619 So.2d 926, 927 (Ala.Civ.App. 1993); and Alabama Catfish,Inc. v. James, 669 So.2d 917, 919 (Ala.Civ.App. 1995)).
Because the trial court accepted Dr. White's opinion that Holt's MRI revealed a compression fracture, it had a reason to discount the testimony of the four other physicians who had assigned Holt no impairment rating and had given him no physical restrictions. Accepting Dr. White's testimony also meant that the trial court had a basis for according little or no weight to the FCE that was determined to be invalid for lack of consistent effort on Holt's part. Dr. White opined that the FCE had been performed too soon after Holt's injury and that Holt had not yet reached MMI when the FCE was conducted.
In light of Holt's prior employment history, which had been limited to manual-labor jobs, Holt's testimony concerning his pain, and the trial court's acceptance of Dr. White's opinion as to the existence of a compression fracture that, Dr. White said, was revealed by Holt's MRI, we cannot hold that the trial court was not presented with substantial evidence to support its judgment that Holt had suffered a 60% loss of ability to earn.
The judgment of the Conecuh Circuit Court is affirmed.
AFFIRMED.
PITTMAN and MOORE, JJ., concur.
THOMPSON, P.J., and BRYAN, J., concur in the result, without writing.