THOMAS, Judge.
Cynthia Yvonne Grand appeals from a judgment in favor of American Trim, LLC, on Grund’s claim for workers’ compensation benefits and on American Trim’s claim for reimbursement of $7,176.49 in insurance premiums it paid on Grund’s behalf during the period Grand was on leave from her employment.

Facts

Grand worked for American Trim in the powder-coat department, performing several different jobs, including racking parts, grinding, and plugging tires. On November 28, 2006, Grand had been plugging tires and then began racking door handles. She said that, while racking door handles, she suddenly felt a burning, tingling pain in her right shoulder; she described the pain as feeling like someone had stuck a knife in her shoulder.
Grand sought treatment from her personal physician, Dr. Gregory Bostick, who later referred her to Dr. John Songer, an orthopedic surgeon, who first saw Grand in February 2007. Dr. Songer diagnosed Grand with carpal tunnel syndrome and a tear in her rotator cuff; he performed surgery on March 14, 2007, to resolve both *775 conditions.[1] Dr. Songer’s records indicate that Grand did not inform him that her rotator-cuff tear was work related; however, after her surgery, Grand did question Dr. Songer as to whether her rotator-cuff tear could have been related to her alleged November 28, 2006, on-the-job accident. Dr. Songer testified in his deposition that he could not determine whether Grand’s rotator-cuff tear was related to her alleged November 28, 2006, on-the-job accident because he had not examined her until three months after the alleged accident.
Grand remained off work for several months after her surgeries. She sought short-term-disability benefits in March 2007. On the application for those benefits, Grand indicated that her condition had not arisen out of her employment and that she did not intend to file a workers’ compensation claim. Grand also stated in the application that her shoulder pain had begun eight months before and that she had first been treated by a physician for the condition six months before. In support of Grund’s application for short-term-disability benefits, Dr. Songer filled out an attending physician’s statement on which he indicated that Grund’s condition was not work related.
After Dr. Songer cleared her to perform light-duty work on July 10, 2007, Grand returned to work on July 12, 2007. Grand worked for only three weeks performing grinding work; her last day of work was August 6, 2007. She saw Dr. Songer again on August 7, 2007, at which time she complained that she was suffering from more pain and discomfort in her right shoulder. Dr. Songer testified, however, that he found no weakness when he checked her rotator cuff at that visit. Dr. Songer placed more restrictions on Grand — specifically, no repetitive motions with her right shoulder — which resulted in Grand not being able to perform any job at American Trim.
Grand next saw Dr. Songer on August 22, 2007. At that time, she complained that she had continued to suffer more pain and discomfort in her right shoulder since she had returned to work and that the pain was now affecting her ability to sleep; Grand also reported intermittent grinding and popping in her shoulder. On September 7, 2007, Grand returned to Dr. Songer, reporting less popping in her right shoulder. Grand returned to Dr. Songer on September 21, 2007, complaining that the pain in her shoulder was worse; Dr. Son-ger noted that he could reproduce the popping of her shoulder and that he then determined that an MRI scan would be necessary to evaluate the rotator-cuff tendon. Dr. Songer testified that he told Grand that she could no longer “work production” at that time, although Grand had last worked at American Trim on August 6, 2007. On September 26, 2007, Grand underwent an MRI, which showed that her rotator cuff was torn in the same general area as the previous surgical repair. Dr. Songer performed a second ro-tator-cuff-repair surgery on Grand on October 1, 2007.
Dr. Songer testified on direct examination in his deposition that he believed that Grund’s second rotator-cuff tear was “probably secondary to her work from ... not following the restrictions.” He commented that “the repetitive overhead use [of the shoulder] and keeping the shoulder up more than eighty, ninety degrees probably would [have contributed to the second rotator-cuff tear].” However, on cross-examination, Dr. Songer was not as certain that Grund’s employment activities caused her second rotator-cuff tear.
*776 Dr. Songer admitted that everything he knew about the jobs that Grund performed had come from Grund’s descriptions of those jobs. He said that he trusted the opinion of the physical therapist to whom he had. referred Grund, Lydia Haynes. Haynes had actually visited the American Trim plant and had observed the jobs that Grund typically performed: the grinding job, the racking job, and the plugging job. Haynes stated in her affidavit and testified at trial that none of the jobs that Grund performed would have violated the weight, forcé, overhead, and repetition restrictions placed on Grund at the conclusion of Grund’s postoperative physical therapy. Based on this information, Dr. Songer indicated that he was not as sure he could relate the second rotator-cuff tear to Grund’s allegedly working outside her restrictions. However, Dr. Songer did state that Grund did not have a second rotator-cuff tear until some time after she had returned to work in August 2007.
Grund sought short-term-disability benefits for a second time in August 2007. On ■ the August 2007 application, she again indicated that the condition for which she was seeking disability was not work related and that she did not intend to file a workers’ compensation claim. As he had on the first attending physician’s statement, Dr. Songer indicated on the August 2007 statement that Grund’s condition was not related to her employment.
At trial, Grund admitted that, as an employee of American Trim, she paid at least a portion of her dental-, medical-, long-term-disability-, and life-insurance premiums. While Grund was on leave from her employment, American Trim paid her portion of those various insurance premiums. Grund testified that American Trim had contacted her and requested that she begin paying her portion of the premiums; Grund admitted that she had not done so because, she said, she could not afford to do so.
Lorri Lee, the health-services coordinator for American Trim, testified that, when an employee is on leave from his or her employment, American Trim pays the entire premiums for the various insurance coverages and that the employee then owes American Trim for the employee’s share of the premiums. If an employee does not pay American Trim while on leave, Lee explained, American Trim would, upon the employee’s return to work, withhold a portion of the employee’s wages until the premiums are repaid. Lee further explained that Grund should have been notified at the time she applied for family/medical leave under the Family and Medical Leave Act (“FMLA”), codified at 29 U.S.C. § 2601 et seq., that American Trim would pay the insurance premiums but that Grund would be required to reimburse American Trim. The record contains a form entitled “Employer Response to Employee” indicating that it was from Scott Dossey, the former health-services coordinator for American Trim, to Grund. This form further indicates that Grund’s request for FMLA leave had been approved. According to the form, Grund was required to pay her share of her health-insurance premium while she was on FMLÁ leave; however, the form also states that, if the premiums were not paid timely by Grund, American Trim would pay Grund’s share of the premiums due. In addition, the form states that American Trim would pay Grund’s share of insurance premiums other than for health insurance while she was on FMLA leave; furthermore, the form specifically states that, “KJf we do pay your premiums for other benefits, when you return from leave you [will] be expected to reimburse us for the *777 payments made on your behalf.”[2]

Procedural History

In May 2007, Grund sued American Trim, seeking workers’ compensation benefits. She alleged that she had suffered an injury to her shoulder arising out of and in the course of her employment on November 28, 2006. American Trim answered the complaint, denying that Grund was due compensation; it amended its answer to assert that Grund had not given proper notice of her injury. American Trim later filed a counterclaim seeking reimbursement of the health-insurance and other insurance premiums it had paid on Grund’s behalf to maintain certain insurance coverage while Grund was out of work on FMLA leave. Grund later amended her complaint to claim that she had suffered a second rotator-cuff tear after she returned to work in August 2007, that she had undergone a second surgery to repair the second rotator-cuff tear, and that the second rotator-cuff tear had resulted in further disability.
After a trial, the trial court entered a judgment denying Grund’s claim for workers’ compensation benefits and awarding American Trim a judgment in its favor for $7,176.49. In its judgment, the trial court determined that Grund had not given American Trim proper notice of the November 2006 injury and that Grund had not proven that her employment had caused either shoulder injury. Grund appeals, arguing that she did provide proper notice of both injuries, that she proved causation of those injuries, and that American Trim failed to prove that she had breached a contract to repay the insurance premiums it had paid on her behalf during her FMLA leave.

Analysis Regarding Grund’s Workers’ Compensation Claim

Our review of the judgment denying Grund’s workers’ - compensation claim is governed by the Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq., which states, in pertinent part: “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala.Code 1975, § 25-5-81(e)(2). Therefore, this court “will view the facts in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala.1996). Further, the trial court’s finding of fact is supported by substantial evidence if it is “supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12-21-12(d)). Our review of legal issues is without a presumption of correctness. Ala.Code 1975, § 25-5-81(e)(l); see also Ex parte Trinity Indus., 680 So.2d at 268.
Because we find the resolution of the causation issue determinative, we will first address Grund’s contention on appeal that she presented sufficient evidence to establish that both of her rotator-cuff tears were caused by accidents occurring during her employment with American Trim.[3] *778 We are' mindful that “[w]hether the employment caused an injury is a question of fact to be resolved by the trial court.” Tenax Mfg. Alabama, LLC v. Holt, 979 So.2d 105, 112 (Ala.Civ.App.2007). As an appellate court, our role is “ ‘ “not to consider whether in [our] opinion the ‘substantial evidence’ before the trial court might have caused [this] court — if it had been the fact-finder — to find the facts to be different from what the trial court found them to be.” ’ ” Francis Powell Enters., Inc. v. Andrews, 21 So.3d 726, 736 (Ala.Civ.App.2009) (quoting Muhammad v. Laidlaw Transit, Inc., 917 So.2d 842, 846 (Ala.Civ.App.2005) (quoting in turn Ex parte Staggs, 825 So.2d 820 822 (Ala.2001))).
“For an injury to be compensable, it must be ‘caused by an accident arising out of and in the course of the employee’s employment. § 25-5-51, Ala.Code 1975. The phrase ‘arising out of an employee’s employment requires a causal connection between the injury and the employment. Dunlop Tire & Rubber Co. v. Pettus, 623 So.2d 313 (Ala.Civ.App.1993). The phrase ‘in the course of the employee’s employment refers to the time, place, and circumstances under which the accident occurred. Id. In accidental cases, i.e., those involving a sudden and traumatic event, an employee must produce substantial evidence tending to show that the alleged accident occurred and must also establish medical causation by showing that the accident caused or was a contributing cause of the injury. Ex parte Trinity Indus., Inc., 680 So.2d [262,] 266 n. 3 [ (Ala.1996) ].”
Pair v. Jack’s Family Rests., Inc., 765 So.2d 678, 681 (Ala.Civ.App.2000). The trial court concluded that Grund had failed to establish a connection between her employment and either of her rotator-cuff tears; that is, the trial court determined that Grund had failed to establish medical causation of her rotator-cuff tears. We agree with the trial court’s conclusion.
Regarding Grund’s alleged November 28, 2006, accident and the rotator-cuff tear diagnosed by Dr. Songer in February 2007, the trial court had before it ample evidence supporting a conclusion that Grund had failed to establish a causal connection between the alleged accident and her rotator-cuff tear. Although Grund testified that she suffered an onset of pain on November 28, 2006, while she was racking door handles, Dr. Songer testified that, because he had not seen Grund until February 2007, he could not relate Grund’s injury to the alleged November 28, 2006, accident. Grund’s failure to indicate that the injury was work related on her short-term-disability application and Dr. Son-ger’s indication that the injury was not work related on the attending physician’s statement in support of Grund’s short-term-disability application also support the conclusion that Grund failed to present sufficient evidence demonstrating that the alleged November 28, 2006, accident resulted in the rotator-cuff tear diagnosed by Dr. Songer in February 2007. Thus, we cannot conclude that the trial court erred when it determined that Grund had failed to establish a causal connection between the alleged November 2006 accident and her first rotator-cuff tear.
Regarding Grund’s second rotator-cuff tear, which was diagnosed by Dr. Son- *779 ger on September 26, 2007, we reach the same conclusion. Dr. Songer testified that he believed that when Grund had returned to work she had worked outside her restrictions, resulting in a second rotator-cuff tear. However, Dr. Songer was not as certain of this fact once he was presented with information indicating that Grund’s return to employment had not required her to work outside the restrictions established by Grund’s physical therapist, Haynes, who had personally observed Grund’s job duties. Notably, it appears from his deposition testimony that Dr. Songer was under the impression that Grund had continued to work at American Trim through August and into September 2007. However, Grund’s last day at American Trim was August 6, 2007, the day before her August 7, 2007, appointment with Dr. Songer. Dr. Songer testified that he found no weakness when he checked Grund’s' rotator cuff at the August 7, 2007, office visit, indicating that it was possible that Grund did not, at that time, have a rotator-cuff tear. Although Grund continued to complain of pain and discomfort and developed popping in her shoulder over the next several weeks, she was no longer performing any work for American Trim. By the time Dr. Songer diagnosed the second rotator-cuff tear on September 26, 2007, Grund had not worked at American Trim for seven weeks.
The trial court could have discounted Dr. Songer’s conclusion that the second rotator-cuff tear resulted from Grund’s return to employment in light of the evidence indicating that Grund’s employment activities did not violate her restrictions. The trial court could also have considered the fact that Grund had not actually worked at American Trim after August 6, 2007, and the fact that Dr. Songer had found no weakness in the rotator cuff during his August 7, 2007, exam as support for a conclusion that Grund had not suffered the second rotator-cuff tear at work, seven weeks before. Thus, we cannot conclude that the trial court erred in determining that Grund’s second rotator-cuff tear was not related to the activities of her employment.[4]
The trial court’s conclusion that Grund had failed to establish that her rotator-cuff tears were caused by an accident or activity related to her employment is supported by substantial evidence. Because we have determined that the trial court could have properly concluded that Grund did not present sufficient evidence of medical causation, we pretermit discussion of Grund’s argument regarding whether she provided proper notice of her November 2006 injury to American Trim. See Favorite Market Store v. Waldrop, 924 So.2d 719, 723 (Ala.Civ.App.2005) (stating that this- court would pretermit discussion of further issues in light of the dispositive nature of another issue). The trial court’s judgment, insofar as it denied Grund workers’ compensation benefits, is affirmed.

Analysis Regarding American Trim’s Reimbursement Claim

Grund further argues that the trial court incorrectly determined that she had *780 breached a contract with American Trim to reimburse any insurance premiums paid on her behalf while she was out of work on short-term-disability leave. Grand argues that American Trim did not establish mutual assent to the terms of any alleged contract for reimbursement. See Whorton v. Bruce, 17 So.3d 661, 665 (Ala.Civ.App.2009) (quoting Board of Comm’rs of Alabama State Bar v. Jones, 291 Ala. 371, 378, 281 So.2d 267, 273 (1973)) (“ Tt has long been the law in Alabama (and indeed it is elementary) that the mutual assent of the parties to the same thing, and in the same sense, is an essential element to every contract.’ ”). However, although American Trim did state in its counterclaim that it was pursuing reimbursement under the terms of the employee handbook, which, in certain eases, could serve as a contract between an employer and an employee, see, e.g., Amoco Fabrics & Fibers Co. v. Hilson, 669 So.2d 832, 834-35 (Ala.1995) (affirming a summary judgment concluding that Amoco’s vacation policy, contained within its employee handbook, created a unilateral contract), at trial American Trim presented an FMLA “Employer Response to Employee” form provided to Grand pursuant to 29 C.F.R. § 825.300(c). As noted above, that form indicates that Grund’s request for FMLA leave was approved; that Grand was expected to pay her share of her health-insurance premiums while she was on FMLA leave; that American Trim would pay her other insurance premiums for her during her FMLA leave; that, if Grand failed to pay her share of the health-insurance premiums, American Trim would pay those premiums for her; and that Grand would be required to reimburse American Trim for her share of the other insurance premiums it had paid on her behalf once she returned from FMLA leave. Thus, we will consider whether, under the FMLA, American Trim was entitled to the $7,176.49 reimbursement awarded to it by the trial court.
Under the FMLA, an employer is required to maintain group-health-insurance benefits for an employee on FMLA leave. 29 C.F.R. § 825.209(a). Any portion of the premium for group health insurance that was borne by the employee before the employee took FMLA leave must still be borne by the employee while on FMLA leave. 29 C.F.R. § 825.210(a). When FMLA leave is taken as unpaid leave, the employer has a choice of several methods of obtaining payment of the employee’s share of the health-insurance premium from the employee, including requiring payment to be made to the employer or the insurance carrier at the same time that a payroll deduction would be made or requiring prepayment of the premiums if FMLA leave is preplanned. 29 C.F.R. § 825.210(c). If an employee fails to make the premium payments, the employer is entitled to recover the employee’s share of the premium payments the employee failed to make, provided that the employer maintained the employee’s health-insurance coverage by paying the employee’s share of the premium. 29 C.F.R. § 825.212(b). If an employee does not return to work after the expiration of his or her FMLA leave, an employer may recover its portion of the group-health-insurance premium only in certain circumstances. 29 C.F.R. § 825.213(a). However, if an employer has elected to maintain other benefits for the employee while the employee is on FMLA leave the employer is entitled to “recover only the costs incurred for paying the employee’s share of any premiums whether or not the emploijee returns to work.” 29 C.F.R. § 825.213(b) (emphasis added). The employer may recover any of the amounts to which it is entitled by appropriate payroll deduction or by instituting legal action against the employee. 29 C.F.R. § 825.213(f).
*781 Because American Trim paid Grund’s share of the health-insurance premiums when Grand failed to do so while she was on FMLA leave, American Trim is entitled to be reimbursed for Grand’s share of the health-insurance premiums that American Trim paid. § 825.212(b). In addition, because American Trim paid Grund’s share of the other insurance premiums while she was on FMLA leave, American Trim is entitled to be reimbursed for the amount of Grund’s share of those premiums as well. § 825.213(b). Although the trial court may have based its determination that American Trim was due $7,176.49 in reimbursement from Grand on a breach-of-contact theory based on a provision allegedly contained in the employee handbook, we are not constrained to consider only whether American Trim established that Grand breached a contract requiring her to reimburse American Trim. See Systrends, Inc. v. Group 8760, LLC, 959 So.2d 1052, 1081 (Ala.2006) (quoting Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1082 (Ala.2004) (quoting in turn Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1020 (Ala.2003))) (noting that an appellate court “ ‘ “may affirm a trial court’s judgment on ‘any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court’ ” ’ ”). Because the evidence established that American Trim is entitled to reimbursement under the FMLA, and because we may affirm a trial court’s judgment provided that it is supported by any valid legal ground, see Sys-trends, 959 So.2d at 1081, we affirm the trial court’s judgment insofar as it awarded American Trim $7,176.49 for reimbursement of Grund’s share of the insurance premiums paid by American Trim while Grand was on FMLA leave.

Conclusion

The trial court’s judgment, insofar as it denied Grand’s claim for workers’ compensation, is supported by 'substantial evidence. Likewise, the trial court’s judgment, insofar as it awarded American Trim a judgment in its favor for $7,176.49 for reimbursement for Grund’s portion of insurance premiums American Trim paid on her behalf while she was on FMLA leave, is in accordance with the law governing FMLA leave and an employer’s right to reimbursement. Accordingly, the trial court’s judgment is affirmed.
AFFIRMED.
THOMPSON; P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.'

. Grand is not seeking workers’ compensation benefits for her carpal tunnel surgery.

. The sentence actually contains the terms "will" and "will not,” each accompanied by a box; the box denoting "will” is checked on the form.

. Grund argues on appeal that the trial court used the wrong legal standard in evaluating her second rotator-cuff tear because, she says, the trial court should not have considered the first rotator-cuff tear to be a preexisting con- *778 ditioh. Because the trial court could well have determined that the second rotator-cuff tear did not occur as a result of Grund’s work activities, as is discussed infra, we preclude discussion of her argument that she did not suffer from a preexisting condition at the time she suffered the second rotator-cuff tear.

. Grund does not argue that the second rota-tor-cuff tear should be treated as a compen-sable injury under the successive-compensa-ble-injury rule as set out by our supreme court in Ex parte Pike County Commission, 740 So.2d 1080, 1084 (Ala.1999) (quoting 1 Arthur Larson & Lex K. Larson, Larson's Workers’ Compensation Law § 13.00 (1998)) ("When determining whether a successive injury is compensable, the general rule is that ‘[wjhen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant’s own intentional conduct.’ ”).